## STATE v. ARLENE CATHERINE HANSEN.

174 N. W. (2d) 697.

January 16, 1970—No. 41238.

C. *Paul Jones,* State Public Defender, and *Roberta K. Levy,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a conviction of third-degree murder. Defendant confessed to setting the fire which killed four persons. There was ample evidence to support the finding of competency and the conviction.

Defendant was a resident of the Kenesaw Hotel in Minneapolis when it burned on May 1, 1967, resulting in the deaths of four persons. Arson investigators Gary Davison and Joseph Woods determined the fire to be of incendiary origin. On the evening of May 1, defendant told her mother that she "thought" she had set the fire. On May 2 defendant had several drinks with friends, and she testified to taking dexedrine pills for her weight and Darvon and Excedrin for headaches. On May 3 defendant, extremely upset, told her husband that she had set the fire and should be punished for it. He gave her a "nerve pill" (sodium butisol) but observed no calming effect. Defendant, in the company of her husband, gave information to a Catholic priest concerning the fire. The priest notified authorities, who dispatched arson investigator Davison to the rectory. Defendant, crying and "emotionally upset," again confessed the act. Mr. Davison advised defendant and her husband of their constitutional rights and questioned them to make sure they understood that they were entitled to have a lawyer provided. Mr. Davison then conducted defendant and her husband to the offices of Chief Arson Investigator Woods at the courthouse.

Mr. Woods again advised defendant and her husband of their constitutional rights and again questioned them to make sure they understood. In response to questioning, defendant accurately related numerous dates and events from her past. Defendant then confessed to starting the fire and drew an accurate diagram of the hotel showing the location of her incendiary act. Defendant also confessed to starting two other fires, one in her home in 1963, which had previously been attributed to smoker's carelessness, and the other in a closet in the Kenesaw Hotel on April 30, 1967, which she had helped to extinguish and which had not been reported. The location of the April 30 fire was immediately investigated and confirmed. Mr. Woods wrote the confession out in longhand, it was signed by defendant, and she was arrested.

Confined to the city jail, defendant attempted suicide that night and was transferred to the psychiatric division of General Hospital. She remained extremely agitated for several days. While undergoing a sleep electroencephalogram at the hospital, defendant became agitated and confessed to killing a brother during a fire at the family home, and to killing a cancer patient while working as a nurse's aid. In fact, no one had died in the family home fire, and the other confession also proved imaginary. Defendant did not regain composure until May 9, and she later testified that she could not recall any of the events from the evening of May 2 until May 9.

A Rasmussen hearing was conducted before Judge Edward J. Parker to determine whether defendant was so incapacitated on May 3 as to render her confession inadmissible. Dr. Jepson, Chief of Psychiatry at General Hospital, while admitting that defendant was "mentally ill," declared to a "reasonable medical certainty" that she had been competent at the time of her confession. The hearing was then continued to give Dr. Diessner, a resident psychiatrist at General Hospital, further opportunity to observe defendant's behavior. Upon resumption, Dr. Diessner testified to defendant's "cognitive slippage" and to her tendency

to deteriorate into episodes of incompetency. Dr. Diessner classified defendant as "competent at this particular moment" but incompetent to stand trial. Dr. Burton, a private psychiatrist called by defendant, was unable to testify to defendant's present competency, but stated that she would be able to understand criminal proceedings against her if she was not suffering from a psychotic episode at the time.

Defendant, called as a witness, denied several of the elements of her confession, but her response to questions indicated an understanding of the proceedings brought against her. Judge Parker concluded that defendant was "in the borderline or grey area of competence to stand trial," and that proceedings would have to terminate if she lapsed into incompetence during trial. Judge Parker also found defendant to have been competent to confess on May 3, and he denied the motion to suppress the confession.

At the trial, Dr. Burton, who had not observed defendant until May 16, testified that defendant's confession was another example of her self-incriminating pattern, and was false. Dr. Burton admitted, however, that responsiveness to questioning indicates a stable state of mind at that time.

■ Defendant contends that she was incompetent to issue an admissible confession on May 3, and that she was incompetent to stand trial. Both of these claims raise factual questions upon which defendant bears the burden of proof and which are to be determined by the trial judge at a pretrial hearing. Minn. St. 611.026; State v. Jensen, 278 Minn. 212, 153 N. W. (2d) 339; State v. Keiser, 274 Minn. 265, 143 N. W. (2d) 75; State v. Penry, 189 Kan. 243, 368 P. (2d) 60. Evidence of defendant's state of mind as of the date of confession and the dates of pretrial hearing was conflicting, but there was ample evidence from which the trial judge could conclude that she was competent. Defendant's claim of having been in a prolonged state of semi-consciousness from May 2 until May 9 was contradicted by Dr. Jepson, who testified to her alertness during this period, as well

as by Davison, Woods, and defendant's husband. Nothing in the trial record indicates a lapse by defendant into incompetency as had been thought possible. We therefore see no reason to overrule the trial court's determination of competence. The defense of insanity was never raised and therefore was not in issue at trial.

■ Defendant also contests the sufficiency of the evidence to support the conviction, claiming that the state failed to prove the corpus delicti (i. e., that the fire was of incendiary origin) and that her confession was too unreliable to be the sole support of a conviction. See, Minn. St. 634.03. Defendant admits that the evidence need only reasonably prove that the burning of the hotel was the result of someone's intentional act, citing State v. Nordstrom, 146 Minn. 136, 178 N. W. 164. We think the independent determination by the arson investigators, prior to defendant's confessions, that the fire was of incendiary origin, as well as defendant's detailed description and diagram of her act, and the verification of the fire of the preceding day, to which she also confessed, provided sufficient support for the conviction. See, State v. Plagman, 265 Minn. 274, 121 N. W. (2d) 621. It was proper to allow the arson investigators, whose qualifications as experts are not questioned, to give their opinion of the origin of the fire since such opinion related to a matter apparently not within the common knowledge or experience of the jury and would aid them in deciding the case. Mickelson v. Pacific Nat. Fire Ins. Co. (D. Minn.) 132 F. Supp. 670, affirmed, Pacific Nat. Fire Ins. Co. v. Mickelson (8 Cir.) 235 F. (2d) 425; State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458.

■ Defendant also contests the trial court's instructions, the pertinent passage of which is:

"Now, one of the facets of this case, an important element of evidence that I should discuss with you, is this matter of the confession. And I would like first to caution you on this, because it's the law in Minnesota that only after the corpus delicti, the body of the crime, is established can the confession be considered by

you. You must first consider or find that the evidence establishes the existence of the fire, there is no controversy about that; the death or deaths, there is no controversy about that, that they resulted from the fire; and also that the fire was set by a criminal agency."

Although this language might have been clearer, we think it adequately conveys the idea that the jury must find the fire to have been intentionally ignited before a conviction would be proper.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.