**STATE of Minnesota, Respondent,**

v.

**Bobby Earl NUNN, Appellant.**

**No. 49541.**

Supreme Court of Minnesota.

Sept. 26, 1980.

C. Paul Jones, Public Defender, and Gregory A. Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., App. Division, David W. Larson and Janeen E. Rosas, Asst. County Attys., Minneapolis, for respondent.

SHERAN, Chief Justice.

Defendant was found guilty by a district court jury of a charge of third–degree murder, Minn.Stat. § 609.195(2) (1978) (unintentional homicide caused by commission of felony upon or affecting the person whose death was caused), and was sentenced by the trial court to a maximum prison term of 25 years. On this appeal from judgment of conviction, defendant contends that (1) there was insufficient evidence of his guilt of third–degree murder because the underlying felony on which his conviction was based, burglary of the dwelling of the victim accompanied by an assault upon the victim, is not a "felony upon or affecting the person," (2) the trial court erroneously denied a request by defense counsel to submit the lesser offense of first–degree manslaughter, Minn.Stat. § 609.20(2) (1978) (manslaughter committed during commission of a crime), (3) the trial court failed to independently rule on the admissibility of defendant's confession to an earlier burglary committed at the dwelling of the victim, and (4) the state failed to meet its burden of proving that the confession in question, which defendant made when he was still a juvenile, was admissible. We affirm.

The state at trial proved that defendant and two other young men unlawfully entered an estate carriage house, in which the groundskeeper of the estate lived, and that while looking for property to steal they were surprised by the sudden appearance of the tenant, whom they severely beat. This beating, while insufficient to cause death to a healthy person, precipitated a fatal heart attack in the victim. Evidence against defendant at trial included testimony by defendant's accomplices and evidence that defendant and a friend had burglarized the same carriage house and stolen money from it less than a year earlier.

■ 1. Defendant's first contention is that the underlying felony on which his conviction was based is a purely property crime and that therefore his conviction for third–degree murder was improper.

Minn.Stat. § 609.195(2) (1978) reads as follows:

> Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:

> \* \* \* \* \* \*

> (2) Commits or attempts to commit a felony upon or affecting the person whose death was caused or another, except criminal sexual conduct in the first or second degree with force or violence within the meaning of section 609.185.

The Advisory Committee Comment to the statute explains the phrase "upon or affecting the person whose death was caused" as limiting the application of the felony–murder rule and then states as an example that "death resulting from the commission of a purely property crime would not fall within the clause." Advisory Committee, *Comment*, in 40 Minn.Stat.Ann. § 609.195, at 220 (West 1964). *See also State v. Forsman*, 260 N.W.2d 160, 164–65 (Minn.1977), in which we interpreted the phrase as ensuring "that a conviction for third–degree murder will not result from a mere property offense.

The purpose of the statutory language in question is to isolate for special treatment those felonies that involve some special danger to human life. In other words, the statute treats as third–degree murder cer-

tain felonious conduct that would otherwise be treated as manslaughter, the rationale being that certain felonious conduct carries with it an especially increased risk that people may be killed as a result and that when a killing occurs as a result of this conduct it is not unfair to punish the person responsible for murder rather than just manslaughter.

There are two basic approaches that could be taken in determining what felonies are covered by the phrase "upon or affecting the person whose death was caused." One would be to determine from the elements of each felony in the abstract whether it inherently involved some special danger to human life. The other approach would be to consider not just the elements of the felony in the abstract but the facts of the particular case and the circumstances under which the felony was committed to determine whether the felony–murder rule should be applied. W. LaFave & A. Scott, *Handbook on Criminal Law*, 547 (1972).

The latter approach is preferable and is the one that we have implicitly followed in our cases. Thus, in *State v. Forsman*, 260 N.W.2d 160 (Minn.1977), we upheld the application of the felony–murder rule when the underlying crime was unlawful distribution of narcotics in which the unlawful distribution consisted of injecting the narcotic into the individual. Similarly, in *State v. Hansen*, 286 Minn. 4, 174 N.W.2d 697 (1970), we upheld a felony–murder conviction when the underlying felony was arson, which is classified in the criminal code in the section entitled "Damage or Trespass to Property."

The underlying felony in this case was a burglary of a dwelling with an accompanying assault upon the resident of the dwelling. As committed, the offense obviously involved special danger to human life. Indeed, even viewed in the abstract, a burglary of a dwelling–while classified in the criminal code under the heading "Damage or Trespass to Property"–should not be deemed a purely property offense because, as the trial court stated, such an offense always carries with it the possibility of violence and therefore some special risks to human life.

■ 2. The related issue raised by defendant is whether the trial court erred in refusing to submit first–degree manslaughter, Minn.Stat. § 609.20(2) (1978), which reads as follows:

Whoever does any of the following is guilty of manslaughter in the first degree and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $15,000, or both:

\*     \*     \*     \*     \*     \*

(2) Causes the death of another in committing or attempting to commit a crime with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby.

Recently, in *State v. Adams*, 295 N.W.2d 527 (1980), we held that if it is clear to the court that the underlying felony was a "felony upon or affecting the person," then the court need only instruct on third–degree felony murder and need not also instruct on first--degree manslaughter in the commission of a crime, because the jury could not reasonably convict defendant of the lesser offense and at the same time acquit him of the greater offense. Here it was apparent to the trial court, after considering the underlying felony not just in the abstract but the evidence concerning the commission of this felony, that the felony was one "upon or affecting the person" and that it would have been unreasonable for the jury to acquit defendant of third–degree murder and convict him of manslaughter.

■ 3. Defendant next contends that the trial court failed to independently consider the issue of the admissibility of the confession to the prior burglary.

The confession was made when defendant was a juvenile, and a special hearing was held in the juvenile division in order to obtain the signed confession, which was still part of defendant's juvenile file. The juvenile court simply ruled that the state's in-

terest in having the written confession outweighed defendant's interests in the confidentiality of his juvenile file.

Defendant's contention is that the trial court mistook the juvenile court's order as being a ruling that the confession was in all respects admissible. While the trial court may have made some statements which, when considered in isolation, might support this conclusion, we think a reading of the entire transcript of the omnibus hearing leaves one with the impression that the trial court considered and rejected all of defendant's contentions relating to the admissibility of the confession. In any event, the issues raised by defendant on appeal relating to the admissibility of the confession are issues which this court would, in any event, decide independently. *See Doan v. State*, 306 Minn. 89, 234 N.W.2d 824 (1975).

■ 4.ˑ The fourth and final issue, then, requires us to independently determine the issues raised by defendant concerning the admissibility of the confession to the prior crime. Defendant, contending generally that the state failed to meet its burden of proving the admissibility of the confession, argues more specifically that no confession by a juvenile should be admitted unless (a) a parent or guardian was present at the time the juvenile waived his rights and (b) the juvenile was told that anything he said could later be used in adult criminal prosecutions.

Recently, in *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the United States Supreme Court, in rejecting the argument that a juvenile who requests it has a right to have his probation officer present during custodial interrogation, repeated its adherence to the totality–of–the–circumstances approach in determining the voluntariness of a waiver of *Miranda* rights by a juvenile, as follows:

This totality–of–the–circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits–indeed, it mandates–inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.
* * *

Courts repeatedly must deal with these issues of waiver with regard to a broad variety of constitutional rights. There is no reason to assume that such courts–especially juvenile courts, with their special expertise in this area--will be unable to apply the totality of the circumstances analysis so as to take into account those special concerns that are present when young persons, often with limited experience in education and with immature judgment, are involved. Where the age and experience of a juvenile indicates that his request for his probation officer or his parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination. At the same time, that approach refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation.

*Id.* at 725–25, 99 S.Ct. at 2572.

In this case the fact that defendant's parents were not present (they were called by the police but were not at home) is only one factor which bore on the voluntariness issue. Other factors included defendant's age (17½), experience (he had had prior contact with the police and the juvenile court system), education (he was a senior high school student), intelligence (his mother testified at the omnibus hearing that he was a slow learner but his friends at trial testified that they were not aware that he

had had any learning problems), the fact that there is no evidence of improper interrogation tactics or length of questioning, the fact that the officer carefully gave him his *Miranda* warning and ascertained that he understood his rights, and the fact that defendant even wrote his confession in longhand using his own words. An examination of the totality of the circumstances convinces us that defendant's waiver of his *Miranda* rights was voluntary. There is nothing to suggest that the juvenile court atmosphere was used to encourage defendant to confess by making him believe that a protective, nonadversary relationship existed, and we do not believe that the police were obliged to give defendant a special warning that his confession might later be used against him in adult court.

Affirmed.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.