**STATE of Minnesota, Respondent,**

v.

**Kevin Richard BRANSON, Appellant.**

**Nos. C6-91-2072, C8-91-2168.**

Supreme Court of Minnesota.

Aug. 7, 1992.

Bruce H. Hanley, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin Co. Atty., Gary S. McGlennen, Asst. Co. Atty., Minneapolis, for respondent.

WAHL, Justice.

The question certified in this appeal asks us to determine whether the felony murder statute, Minn.Stat. § 609.19(2) (1990), applies where a bystander is killed during an exchange of gunfire in which the defendant allegedly participated but where the fatal shot was fired by someone other than the defendant or someone associated with the defendant in committing or attempting to commit a felony.

The facts, briefly summarized from the complaint, are these: In the early morning hours of May 26, 1991, as Troy Quigley and

his brother were leaving a bar in South Minneapolis, they became caught in the middle of an exchange of gunfire between alleged members of two rival "street gangs." Troy Quigley was fatally shot in the exchange. Four persons, including defendant Kevin Richard Branson, an alleged participant in the group that did not fire the fatal shot, were charged with three counts of second-degree felony murder[1] and one count of third-degree depraved mind murder[2] in the death of Troy Quigley.

The trial court denied Branson's motion to dismiss the second-degree murder counts predicated on the felonies of riot and assault. The court did, however, dismiss the second-degree murder count predicated on the felony of reckless endangerment concluding that count to be functionally indistinguishable from, and duplicative of, the third-degree depraved-mind murder count. The state appealed; defendant cross-appealed; and the trial court certified this question:

> Does the felony-murder statute, Minn. Stat. § 609.19(2), apply to a circumstance where a bystander is killed during an exchange of gunfire in which the defendant allegedly participated, but where the fatal shot was fired by someone in the group adverse to the defendant, rather than by the defendant or someone associated with him?

We accepted accelerated review.

At early English common law, the felony-murder rule required that "one who, in the commission or attempted commission of a felony, caused another's death, was guilty of murder, without regard to the dangerous nature of the felony involved or the likelihood that death might result from the defendant's manner of committing or attempting the felony." 2 W. LaFave & Scott, Jr., *Substantive Criminal Law* § 7.5, at 206–07 (1986). The felony-murder rule developed to allow "one whose conduct brought about an unintended death in the commission or attempted commission of a felony [to be found] guilty of murder" by imputing malice where there was no specific intent to kill. LaFave & Scott, § 7.5, at 206; *King v. Commonwealth,* 6 Va.App. 351, 368 S.E.2d 704, 706 (1988). However, it was "not enough that a killing occur 'during' the felony or its attempt or 'while' it is committed or attempted; something more [was] required than mere coincidence of time and place." LaFave & Scott, § 7.5, at 222. The defendant must actually have caused the death.

At the time the felony-murder rule developed, only a limited number of criminal

---

1. Count I: Murder in the Second Degree—that defendant "intentionally aiding, advising, hiring, counseling or conspiring with others known and unknown, and while using firearms within the meaning of Minn.Stat. § 609.11, as amended, did, without intent to effect the death of any person, cause the death of Troy Lamark Quigley, a human being, while committing or attempting to commit the felony of offense of *Riot.*" Complaint. *See* Minn.Stat. §§ 609.19(2), 609.05, 609.11 (1990).

Count III: Murder in the Second Degree—that defendant and others "intentionally aiding, advising, hiring, counseling or conspiring with each other and others known and unknown, and while using firearms within the meaning of Minn.Stat. § 609.11, as amended, did without intent to effect the death of any person, cause the death of Troy Lamark Quigley, a human being, while committing or attempting to commit the felony of offense of *Reckless Endangerment With a Dangerous Weapon.*" Complaint. *See* Minn.Stat. § 609.66 (1990). *See also* Minn.Stat. §§ 609.19(2), 609.05, 609.11 (1990).

Count IV: Murder in the Second Degree—that defendant and others "intentionally aiding, advising, hiring, counseling or conspiring with each other and others known and unknown, and while using firearms within the meaning of Minn.Stat. § 609.11, as amended, did without intent to effect the death of any person, cause the death of Troy Lamark Quigley, a human being, while committing or attempting to commit the felony of offense of *Assault in the Second Degree.*" Complaint. *See* Minn.Stat. §§ 609.19(2), 609.05, 609.11 (1990).

2. Count II: Murder in the Third Degree—that defendant "intentionally aiding, advising, hiring, counseling or conspiring with others known and unknown, and while using firearms within the meaning of Minn.Stat. § 609.11, as amended, did, without intent to effect the death of any person, cause the death of Troy Lamark Quigley, a human being, by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life." Complaint. *See* Minn.Stat. §§ 609.195(a), 609.05, 609.11 (1990).

acts were felonies and all felonies were punishable by death: "[I]t made little difference whether the felon was hanged for the felony or for the murder." LaFave & Scott, § 7.5 at 207 n. 4. However, the number of felonies grew to include many relatively minor offenses for which the penalties were much less severe than those imposed for murder. American jurisdictions responded by placing various restrictions on its use, such as restricting its application to felonies that are inherently dangerous to life.[3] Elliot, *The Merger Doctrine as a Limitation on the Felony–Murder Rule: A Balance of Criminal Law Principles*, 13 Wake Forest L.Rev. 369, 376–77 (1977).

Despite these limitations, felony murder remains an anomaly in the law of homicide. With the exception of involuntary manslaughter, which carries a significantly lighter sanction, it is the only form of homicide not requiring proof of a specific mental element. Note, *Felony–Murder: A Tort Law Reconceptualization*, 99 Harv. L.Rev. 1918, 1919 (1986). Because malice is imputed from crimes qualitatively different from and far less severe than murder, the most serious sanctions known to law may be imposed for what in fact may have been an accidental death.

The rule has been severely criticized for its mechanical operation, penological purposes, and its intrinsic unfairness. *See, e.g.,* Note, *Felony–Murder: A Tort Law Reconceptualization*, 99 Harv.L.Rev. 1918 (1986); John S. Anooshian, Note, *Should Courts Use Principles of Justification and Excuse to Impose Felony–Murder Liability?*, 19 Rutgers L.J. 451 (1988); Roth & Sundby, *The Felony–Murder Rule: A Doctrine at Constitutional Crossroads*, 70 Corn.L.Rev. 446 (1985). Notwithstanding such criticism, the felony-murder rule has continued to exist in the United States in one form or another.

In considering whether one committing or attempting to commit a felony can be held criminally responsible for a death caused by a third party during the commission of the felony, courts in most jurisdictions hold that the "doctrine of felony murder does not extend to a killing, although growing out of the commission of the felony, if directly attributable to the act of one other than the defendant or those associated with him in the unlawful enterprise." *State v. Canola,* 73 N.J. 206, 374 A.2d 20, 23 (1977). *See, e.g., People v. Washington,* 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965); *Alvarez v. Denver,* 186 Colo. 37, 525 P.2d 1131 (1974); *Weick v. State,* 420 A.2d 159 (Del.1980); *State v. Crane,* 247 Ga. 779, 279 S.E.2d 695 (1981); *State v. Garner,* 238 La. 563, 115 So.2d 855 (1959); *Campbell v. State,* 293 Md. 438, 444 A.2d 1034 (1982); *Commonwealth v. Balliro,* 349 Mass. 505, 209 N.E.2d 308 (1965); *State v. Majors,* 237 S.W. 486 (Mo.1922); *State v. Rust,* 197 Neb. 528, 250 N.W.2d 867 (1977), *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *Sheriff, Clark County v. Hicks,* 89 Nev. 78, 506 P.2d 766 (1973); *Jackson v. State,* 92 N.M. 461, 589 P.2d 1052 (1979); *People v. Wood,* 8 N.Y.2d 48, 201 N.Y.S.2d 328, 167 N.E.2d 736 (1960); *State v. Oxendine,* 187 N.C. 658, 122 S.E. 568 (1924); *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970); *State v. Severs,* 759 S.W.2d 935 (Tenn.Crim.App.1988); *Wooden v. Commonwealth,* 222 Va. 758, 284 S.E.2d 811 (1981).

This rule is sometimes referred to as the "agency" theory of felony murder:

> The classic statement of the [agency] theory is found in an early case applying it in a context pertinent to the case at bar, as follows:
>
>> "No person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by someone acting in concert with him or in furtherance of a common object or purpose."
>
> *Felony–Murder Rule: A Balance of Criminal Law Principles,* 13 Wake Forest L.Rev. 369, 376 (1977).

---

**3.** In 1957, the doctrine was abolished in England, the "birthplace of felony-murder." Elliot, *The Merger Doctrine as a Limitation on the*

*State v. Canola,* 73 N.J. 206, 374 A.2d 20, 23 n. 2 (1977) (citations omitted) (quoting *Commonwealth v. Campbell,*[4] 89 Mass. (7 Allen) 541, 544 (1863)).

However, a minority of jurisdictions attach "liability under the felony-murder rule for *any* death proximately resulting from the unlawful activity * * * notwithstanding the killing was by one resisting the crime." *Canola,* 374 A.2d at 23 (emphasis in original). *See, e.g., Johnson v. State,* 252 Ark. 1113, 482 S.W.2d 600 (1972); *Mikenas v. State,* 367 So.2d 606 (Fla.1978); *People v. Hickman,* 59 Ill.2d 89, 319 N.E.2d 511 (1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975); *State v. Moore,* 580 S.W.2d 747 (Mo.1979); *Johnson v. State,* 386 P.2d 336 (Okla.Crim.App.1963); *Miers v. State,* 157 Tex.Crim. 572, 251 S.W.2d 404 (App.1952). *See also State v. Baker,* 607 S.W.2d 153, 157 (Mo.1980).

In Minnesota, prior to 1981, application of the felony-murder rule was limited by statute to felonies "upon or affecting the person whose death was caused." The Advisory Committee Comment to section 609.-195(2)[5] explains that the phrase "upon or affecting the person whose death was caused" limited the application of the felony-murder rule: "[D]eath resulting from the commission of a purely property crime would not fall within the clause." M.S.A. § 609.195 Advisory Committee Comment (1987).

In *State v. Nunn,* 297 N.W.2d 752 (Minn. 1980), we said the purpose of that restriction was "to isolate for special treatment those felonies that involve some special danger to human life." *Id.* at 753. We then explicated the rationale underlying our felony murder statute and explored its reaches:

> [T]he statute treats as third-degree murder certain felonious conduct that would otherwise be treated as manslaughter, the rationale being that certain felonious conduct carries with it an especially increased risk that people may be killed as a result and that when a killing occurs as a result of this conduct it is not unfair to punish the person responsible for murder rather than just manslaughter.

*Id.* at 753–54.

In determining what felonies would be predicate felonies under section 609.195(2), we indicated that the court favored and had implicitly followed the approach of considering, not just the elements of the felony in the abstract, but the facts of the particular case and the circumstances under which the felony was committed to determine whether the felony murder rule should be applied. *Id. See also State v. Forsman,* 260 N.W.2d 160, 164–65 (Minn.1977) (holding the distribution of heroin by direct injection into the body of another to be a felony "upon or affecting the person whose death was caused" but reiterating that, by using those words in the felony murder statute, the legislature "has ensured that a conviction for third-degree murder will not result from a mere property offense"); *State v. Hansen,* 286 Minn. 4, 174 N.W.2d 697 (1970) (holding that arson supported a felony-murder conviction even though arson was a property crime, classified by the legislature under a section entitled "Damage to Property").

---

**4.** In *Commonwealth v. Campbell,* 89 Mass. (7 Allen) 541 (1863), James Campbell was indicted for murder based on his participation, along with a large number of other persons, in a riot that grew out of the enforcement of a draft of men for the army during the Civil War. A military force was called in to suppress the riot and "the mob were [sic] fired upon by the soldiers, and the soldiers by the mob." *Id.* at 542. Someone in the crowd was shot and killed. Although it was not known who fired the fatal shot, the state charged the defendant and others with manslaughter, attempting to hold all individuals "unlawfully engaged in the transactions" responsible for the death by arguing for an expansion of the law of accomplice liability. *Id.* at 543–44. The court held that the defendant could be convicted of murder or manslaughter only if the jury was satisfied beyond a reasonable doubt that the deceased was killed by means of a gun or other deadly weapon in the hands of the defendant or one of the rioters with whom he was associated. The jury acquitted the defendant. *Id.* at 547–48.

**5.** Now found at M.S.A. § 609.195 (1987) (Advisory Committee Comment).

Thus, by 1981 the state of the law regarding felony murder under § 609.195(2) could be stated as follows: Whoever (i.e., a defendant and those associated with him in perpetrating the felonious conduct) caused the death of another (not qualifying as first or second degree murder) by committing or attempting to commit a felony which, as committed, involved special danger to human life could be charged with felony murder. Any felony, not otherwise proscribed, which, as committed, involved special danger to human life, could serve as a predicate felony.

In 1981, the legislature removed the express limitation from the felony-murder statute by deleting the phrase "a felony upon or affecting the person whose death was caused or another" and substituting the words "a felony offense other than criminal sexual conduct in the first or second degree with force or violence." [6] Act of May 19, 1981, ch. 227, §§ 10 & 11, 1981 Minn.Laws 1006, 1010 (codified at Minn. Stat. § 609.19(2) (1990)). The trial court, whose analysis the state adopts and on which the state rests its case, concluded that the charges brought against defendant in this case could not have been sustained prior to 1981 when the law required that the person killed be the object of the predicate felony. The trial court concluded, however, that under the expanded definition the charges of felony murder in this case are "at least cognizable." Order of

October 15, 1991, Memorandum at 9. We recognize the trial court's good efforts but we do not arrive at the same conclusion as to the effect of the 1981 amendment. We think it is too much to assume that, in eliminating the express limitation concerning appropriate predicate felonies, the legislature also incorporated into the law of felony murder a wholly new and expansive rule of vicarious liability.

We think it significant that there are no reported cases indicating that anyone in Minnesota has ever before been charged under the felony-murder provisions for a death committed by someone not associated with the defendant in the commission of the predicate felony.[7] This is so even since 1981, the general assessment being that the intent of the 1981 amendment was to remove the limitation on the predicate felony, not to expand the law on vicarious liability by means of felony murder. Moreover, although "the felony-murder rule provides for imputing malice to an accidental killing; it does not impute the act of killing." [8] *King*, 368 S.E.2d at 708. Thus, an extension of the felony-murder statute to include liability for the acts of a non-accomplice differs qualitatively from an extension of the statute to incorporate more felonies from which criminal intent can be imputed. The felony murder statute in Minnesota as far back as 1885 [9] simply did not extend to lethal acts committed by other persons for

6. The legislature simultaneously elevated felony murder from third-degree murder to second-degree murder with a possible sentence of 40 years instead of 25 years. Act of May 19, 1981, ch. 227, §§ 10 & 11, 1981 Minn.Laws 1006, 1010 (codified at Minn.Stat. § 609.19(2) (1990).

7. As the court in *Campbell* stated, "[t]his consideration, though by no means decisive, is entitled to some weight, because the law of homicide * * * is perhaps more fully and clearly settled than any other branch of the law." *Campbell*, 89 Mass. (7 Allen) at 543.

8. The felony-murder rule's

original and present effect is the imputation of a certain state of mind, the *mens rea* regarded as essential to liability for murder, to one who may or may not in fact have had that

intention. The classic *mens rea* of murder is an intention to kill; this is extended to include an intention to do an act intrinsically likely to kill, possibly formulated sufficiently by an intention to inflict grievous bodily harm. * * * The felony-murder rule is thus a rule for establishing the *mens rea* of murder; it is not a rule of causation, it does not bear upon the *actus reus* of homicide.
N. Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U.Pa.L.Rev. 50, 59 (1956).

9. Under the Penal Code of 1885 the killing of a human being, without either premeditation or intent, by a person engaged in the commission of, or in an attempt to commit, a felony either "upon or affecting the person killed" was murder in the third degree. P.C. § 155, 2 Stat. of Minn. 1879–88, at 970–71.

which the defendant would not otherwise be liable under our accomplice liability statute.[10]

We will not impute such a broad scope to the felony-murder statute. Nor do we find it necessary to now "adopt" the agency theory advanced by defendant. It has long been the law that only a person (or one for whose acts that person was criminally liable under our accomplice liability statute) who caused the death of another person while committing or attempting to commit a felony could be charged with felony murder. The amendatory provisions of 1981 did not change the law in this regard. Clearly, without more, the change in statutory language does not evince a legislative intent to extend the liability of a felon for crimes committed by another beyond that which is contained in Minn.Stat. § 609.05.[11]

■ We therefore answer the certified question in this case in the negative: The felony murder statute, Minn.Stat. § 609.-19(2), does not extend to apply to a situation in which a bystander is killed during exchange of gunfire in which defendant allegedly participated but where the fatal shot was fired by someone in a group adverse to the defendant rather than by the defendant or someone associated with the defendant in committing or attempting to commit a felony. This result, we believe, is in accordance with the general scheme for the gradation of criminal culpability in our homicide law whereby increasing levels of criminal responsibility are based upon the actor's criminal intent.

We emphasize that the issue before us is not whether the defendant can escape criminal liability, but rather, with what crimes the defendant may be properly charged under the circumstances of this case. We are not suggesting that defendant Branson not be held responsible for his conduct. Instead, we believe that judicial intrusion upon what has heretofore been well-settled law is neither wise nor necessary where our criminal code and sentencing guidelines [12] adequately encompass the conduct

---

10. Minnesota's accomplice liability statute, currently found at Minn.Stat. § 609.05 (1990), can be traced back to territorial days. *See* Minn. Rev.Stat. ch. 119, § 85 (1851).

11. The state charged the defendant under Minn. Stat. § 609.05 and, at oral argument, explained that defendant was a co-conspirator or an "aider and abettor" to an adversary's act of unintentionally shooting and killing Quigley. Under this theory, the question is whether the relationship between the defendant and the individual who fired the fatal shot fits within the purview of our accomplice liability statute so as to make defendant liable for the act of his "co-felon." As the trial court observed, the accomplice liability statute by its language reaches co-felons or those who are joined in a common criminal enterprise, not those who—whether justifiably or feloniously—resist that enterprise. *See, e.g., In re M.D.S.,* 345 N.W.2d 723, 733–34 (Minn. 1984); *In re S.W.T.,* 277 N.W.2d 507, 514 (Minn. 1979); *State v. Parker,* 282 Minn. 343, 355, 164 N.W.2d 633, 641 (1969).

Furthermore, expanding the law of accomplice liability to include the circumstances found in the case at hand risks "extraordinary consequences," similar to those discussed in *Campbell:*

Indeed, it seems to us that in every aspect the doctrine contended for, if followed to its legitimate and logical conclusion, would lead to extraordinary consequences. It would render everybody who participated in a transaction, whether acting in concert or in opposition, whether united in a common design or arrayed on opposite sides in a contest or affray in which each contending party was striving to defeat the purposes of the other, if all acted without legal justification, responsible for every criminal act which was done by any person during the progress of the affair in which they were all engaged. * * * The real distinction is between acts which a man does either actually or constructively, by himself or his agents or confederates, and those which were done by others acting not in concert with him or to effect a common object, but without his knowledge or assent, either express or implied. For the former the law holds him strictly responsible, and for all their necessary and natural consequences, which he is rightfully deemed to have contemplated and intended. For the latter he is not liable, because they are not done by himself or by those with whom he is associated, and no design to commit them or intent to bring about the results which flow from them can be reasonably imputed to him.
*Campbell,* 89 Mass. (7 Allen) at 545–46.

12. *See, e.g.,* Minn.Stat. § 609.229 (1991 Supp.) (Crime committed for benefit of a gang) and Minn. Sentencing Guidelines and Commentary § II, comment II.D.205 (1991).

at issue here.[13]

13. We note that the defendant has also sought relief from the second count in the complaint, depraved-mind third degree murder, but where neither party has briefed the issue in a manner sufficient for full review, we will not reach it in this pre-trial context. Cf. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989).