**STATE of Minnesota, Appellant,**

v.

**Jerrett Lee ANDERSON, Respondent.**

No. C9–02–1043.

Court of Appeals of Minnesota.

Dec. 24, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for appellant.

Barry V. Voss, Minneapolis, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge, PETERSON, Judge, and G. BARRY ANDERSON, Judge.

## O P I N I O N

### G. BARRY ANDERSON, Judge.

Appellant State of Minnesota asserts that the district court clearly erred by dismissing a felony murder charge and concluding that neither felon in possession nor possession of a stolen firearm can serve as predicate offenses to felony murder. Because the district court erroneously failed to consider the manner in which respondent committed the other crimes and, because respondent's possession of a loaded shotgun posed a special danger to human life when pointed at the victim's head from a few feet away, we reverse.

### FACTS

On February 26, 2002, respondent, Jerrett Lee Anderson, brought a loaded, stockless, pump-action 12–gauge shotgun to the house of Blake Rogers. Respondent told Rogers and a third party that he had stolen the gun. Respondent passed the gun to Rogers and the third party. They remarked that it was loaded and they returned the gun to respondent. While Blake Rogers knelt to load compact discs into his stereo system, respondent pointed the shotgun at Rogers's head. The gun discharged, killing Blake Rogers. The third party and respondent ran from the house after Rogers fell over from the shotgun blast.

Prior to the killing, respondent had been convicted of riot in the second degree, a felony and a "crime of violence" pursuant to Minn.Stat. § 624.712, subd. 5 (2000). Thus, under Minn.Stat. § 624.713, subd. 1(b) (2000), it was a felony for respondent to possess the shotgun. The state charged respondent with unintentional murder in the second degree, Minn.Stat. § 609.19, subd. 2(1) (felony murder), and murder in the third degree, Minn.Stat. § 609.195(a) (2000) (depraved-mind murder). The district court found that probable cause existed for murder in the third degree but dismissed the murder in the second degree charge, ruling that felon in possession and possession of a stolen firearm are not legal predicates for felony murder. The state appealed the dismissal under Minn. R.Crim. P. 28.04, subd. 1(1).

### ISSUE

Did the district court err in ruling that the offenses of felon in possession of a firearm and possession of a stolen firearm are not proper predicate offenses to sustain a second-degree felony murder charge?

### ANALYSIS

The State of Minnesota claims the district court erred in dismissing the felony-

murder charge against respondent on the basis that felon in possession and possession of a stolen firearm are not inherently dangerous offenses. The state claims that viewing respondent's actions in totality demonstrates that the commission of the underlying felonies was inherently dangerous to human life and therefore these crimes are sufficient predicate offenses for felony murder.

■ The state appealed directly from the district court's pretrial dismissal for lack of probable cause. The state may appeal as of right to this court "in any case, from any pretrial order of the trial court, including probable cause dismissal orders based on questions of law." Minn. R.Crim. P. 28.04, subd. 1(1). To prevail, the state must clearly show that the district court "erred in its judgment and * * * the error will have a critical impact on the outcome of the trial." *State v. Hanson*, 583 N.W.2d 4, 5 (Minn.App.1998) (quotation omitted), *review denied* (Minn. Oct. 29, 1998). Critical impact exists where the district court dismisses a complaint for lack of probable cause. *Id.* at 6. Respondent has conceded that the district court's dismissal of count one for lack of probable cause will have a critical impact on the outcome of trial.

■ The issue of first impression before this court is whether the felony murder rule permits felon in possession or possession of a stolen firearm to be used as predicate offenses to felony murder. Because this issue is a question of law, appealable under Minn. R.Crim. P. 28.04, subd. 1(1), this court must review it de novo. *See State v. Linville*, 598 N.W.2d 1, 2 (Minn.App.1999) (reviewing statutory interpretation underlying dismissal for lack of probable cause); *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996) (holding that whether a statute has been properly con-

strued is a question of law subject to de novo review).

The Minnesota felony murder statute provides:

> Whoever does * * * the following is guilty of unintentional murder in the second degree and may be sentenced to imprisonment for not more than 40 years:
> (1) causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting[.]

Minn.Stat. § 609.19, subd. 2(1) (2000). Under its plain language, this statute applies to all felonies except criminal sexual conduct in the first degree, criminal sexual conduct in the second degree with force or violence, or a drive-by shooting. *Id.*

The felony murder rule was constructed to allow "one whose conduct brought about an unintended death in the commission or attempted commission of a felony [to be found] guilty of murder" by imputing malice when there was no obvious evidence of intent to kill. *State v. Branson*, 487 N.W.2d 880, 881 (Minn.1992) (quoting 2 W. LaFave & Scott, Jr., *Substantive Criminal Law* § 7.5, at 206 (1986)) ("LaFave & Scott"). The common law felonies included in this rule were homicide, rape, arson, mayhem, robbery, burglary, larceny, prison breach, and rescue of a felon. *State v. Aarsvold*, 376 N.W.2d 518, 521 (Minn.App.1985). While some states still follow the common law rules, most states have attempted to limit the felony murder doctrine in various ways. LaFave & Scott, § 7.5, at 206.

In Minnesota, prior to 1981, felony murder was limited by statute to felonies "upon or affecting the person whose death was caused." Minn.Stat. Ann. § 609.195(2) advisory comm. cmt. (West

1987). This wording limited the application of the statute: "[D]eath resulting from the commission of a purely property crime would not fall within the clause." *Id.* The supreme court stated that the justification for this restriction was to "isolate for special treatment those felonies that involve some special danger to human life." *State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980).

In 1981, the legislature amended section 609.195 to apply to any felony except "criminal sexual conduct in the first or second degree with force or violence." 1981 Minn. Laws ch. 227, §§ 10 & 11 (codified at Minn.Stat. § 609.19, subd. 2(2) (1982)). Thus, any felony not otherwise proscribed could serve as a predicate felony if it involved special danger to human life. *Branson,* 487 N.W.2d at 884.

States have construed the requirement that predicate felonies be a special danger to human life in two different ways. LaFave & Scott, § 7.5(b), at 209. Under one approach, courts view the elements of the predicate felony in the abstract to determine whether the offense is inherently dangerous. *Id.* This approach does not weigh the facts of the particular case in deciding whether the predicate felony poses a special danger (the "elements" test).[1] *Id.* The second approach examines the facts of the particular case, including the circumstances in which the felony was committed, to determine whether there was a foreseeable danger to human life (the "totality of the circumstances" test). *Id.* The Minnesota Supreme Court has adopted the totality of the circumstances approach. *Nunn,* 297 N.W.2d at 754.

■ The state argues that the district court incorrectly applied the totality of the circumstances test by failing to consider the actions surrounding respondent's commission of the underlying possession felonies. The state contends that whether felon in possession or possession of a stolen firearm are inherently dangerous in the abstract is irrelevant under the totality of the circumstances test. Respondent's pointing a stockless, loaded shotgun at the victim's head from a few feet away was clearly inherently dangerous.

The potential predicate offenses here, felon in possession and possession of a stolen firearm, are status offenses, or *mala prohibitum,* which courts have less frequently relied upon as predicate offenses to felony murder. Although the common law felonies (all *mala in se*) traditionally provided the basis for a felony murder conviction, Minnesota courts have also used *mala prohibitum* felonies as predicate offenses. *See, e.g., State v. Cole,* 542 N.W.2d 43 (Minn.1996) (shoplifting); *State v. Back,* 341 N.W.2d 273 (Minn.1983) (damage to property); *State v. Forsman,* 260 N.W.2d 160 (Minn.1977) (sale of narcotics); *Smith v. State,* 596 N.W.2d 661 (Minn.App. 1999) (sale of narcotics). Only after examining the particular circumstances of each case did the court find that an inherent danger to human life existed.

In contrast, this court has also held that the sale of cocaine, another *malum prohi-*

---

1. Most courts that have adopted the elements test have concluded that felon in possession of a firearm is not an inherently dangerous felony. *See, e.g., People v. Satchell,* 6 Cal.3d 28, 98 Cal.Rptr. 33, 489 P.2d 1361 (1971) (holding that under the elements test, possession of a firearm was passive and not a felony inherently dangerous to human life), *overruled on other grounds by People v. Flood,* 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869 (1998); *State v. Underwood,* 228 Kan. 294, 615 P.2d 153 (1980) (stating that unlawful possession of a firearm, when viewed in the abstract, is not a felony inherently dangerous to human life and would not sustain conviction for murder in the first degree under felony murder rule).

*bitum* crime, was not a proper predicate offense. *Aarsvold*, 376 N.W.2d 518 ("[T]he sale of cocaine alone does not justify the assumption that the purchaser is incurring a substantial and unjustified risk of death * * *."). *Id.* at 522. The district court found that *Aarsvold* was comparable to the present facts because both involved potentially dangerous situations—here, a felon in possession of a firearm—in *Aarsvold*, the sale of cocaine. This analysis, however, overlooks that *Aarsvold* held that the sale of cocaine alone did not carry with it an unjustified risk of death. *Id.* By looking at the circumstances of the sale, the court found that nothing was inherently more dangerous about the sale than any other cocaine purchase. *Id.* Thus, because dealers often sell cocaine without causing death, the court held that the drug transaction was not an inherently dangerous felony capable of supporting a felony murder charge. *Id.*

In contrast, here, the danger in possessing a firearm and pointing it at the head of another is dramatically more significant than the danger associated with a common drug sale. Although the certainty of death is still not automatically linked to such actions, the risk of an intentional or accidental discharge killing a person is much higher.

We find the *Cole* analysis more useful and applicable. 542 N.W.2d 43. *Cole* clearly used a totality-of-the-circumstances analysis in applying the felony murder doctrine to felony-theft and second-degree assault. Under *Cole*, there was an inherent danger to human life where the defendant entered a department store, armed with a loaded gun, to return stolen goods. The defendant shot and killed a police officer to avoid arrest for the felony theft charge. *Id.* at 47. The supreme court

found that there were two predicate offenses: (1) the property crime of theft and (2) second-degree assault because the circumstances indicated a high degree of risk to human life. *Id.* at 52.

The *Aarsvold* and *Cole* courts viewed the underlying felonies according to their relative likelihood of producing an unexpected homicide and should be compared on that basis. In *Cole*, the likelihood of a homicide from the defendant's use of a loaded, concealed, gun to commit theft was foreseeable, while there was far less likelihood that the drug use in *Aarsvold* would lead to death. Similarly, here, respondent's possession of a loaded, stockless shotgun pointed at the victim's head involved a substantial risk of death. The respondent's unsafe possession of a loaded, dangerous weapon eventually killed someone. We recognize respondent did not commit the murder to further any of the underlying felonies. Nevertheless, we hold that pointing a loaded shotgun, potentially difficult to control because of the absence of a rifle stock, at another human being from close quarters is certainly reckless behavior. Indeed, the district court held as much by finding probable cause for a depraved mind murder charge. Because respondent acted in an inherently dangerous manner during his ongoing criminal possession of the firearm, the district court erred by dismissing the felony murder charge.

The felony murder count here is consistent with the broad legislative definition of felony-murder and within the parameters of *Cole* and similar Minnesota Supreme Court decisions. The holdings of other jurisdictions regarding this issue also support our conclusion that respondent's firearm possession here was inherently dangerous.[2] Respondent not only knew the

---

**2.** *Metts v. State*, 270 Ga. 481, 511 S.E.2d 508

(1999) held that, under the totality of the

victim was present, he pointed a loaded, stockless shotgun at the victim from only a few feet away. Viewing all the circumstances of respondent's commission of the underlying felonies leads inescapably to the conclusion that appellant's behavior was inherently dangerous to human life.

## DECISION

Under an analysis based on the totality of the circumstances, respondent's possession of a firearm was inherently dangerous to human life. Accordingly, we reverse the district court and hold that, where a loaded, stockless firearm is pointed at another and is discharged, resulting in death, felon in possession or possession of a stolen firearm may serve as predicate offenses to felony murder.

**Reversed.**

HUDSON, Judge (dissenting).

I respectfully dissent. The majority's holding, that a felony-murder charge may be predicated on a "status" offense, is a dangerous and unwarranted extension of the felony-murder doctrine that ignores the doctrine's historical roots, and does so in the absence of explicit legislative directive. As the majority notes, the felony-murder rule developed to allow "one whose conduct brought about an unintended death in the commission or attempted commission of a felony [to be found] guilty of murder" by imputing malice when no in-

tent to kill was evident. *State v. Branson,* 487 N.W.2d 880, 881 (Minn.1992) (quoting 2 Wayne LaFave et al., *Substantive Criminal Law,* § 7.5, at 206–07 (1986)). The rationale for the rule is that certain felonious conduct carries with it an especially increased risk that people may be killed as a result, and that when a killing occurs as a result of this conduct, fairness allows punishing the person responsible for murder as opposed to just manslaughter. *State v. Nunn,* 297 N.W.2d 752, 754 (Minn. 1980). Traditional predicate felonies under the rule include homicide, mayhem, rape, arson, robbery, burglary, larceny, prison breach, and rescue of a felon. JoAnne Adlerstein, *Felony–Murder in the New Criminal Codes,* 4 Am. J.Crim. L. 249 (1975–76). Because of the harshness of the felony-murder rule, most states have attempted to limit the felony-murder rule in various ways. *See* 2 LaFave, *supra* at 208.

Despite these limitations, felony murder remains an anomaly in the law of homicide. Except for involuntary manslaughter, which carries a significantly lighter sanction, felony murder is the only form of homicide not requiring proof of a specific mental element. *See* Note, *Felony–Murder: A Tort Law Reconceptualization,* 99 Harv. L.Rev.1918, 1919 (1986) *cited in Branson,* 487 N.W.2d at 882. Because malice may be imputed from crimes qualitatively different from and far less severe

circumstances, felon in possession was an inherently dangerous offense. *Id.* The defendant in that case pointed a loaded, cocked gun in the direction of a window, on the other side of which he knew there was a human being. *Id.* at 510. After the gun discharged and killed the victim on the other side of the window, the defendant admitted that he had shot the victim but asserted that the gun fired accidentally. *Id.* In light of these circumstances, the court held that the defendant's possession of the firearm was "dangerous and life-threatening, and had 'an undeniable con-

nection to the homicide * * *.' " *Id.* (quotations omitted). *Cf. Ford v. State,* 262 Ga. 602, 423 S.E.2d 255 (1992). In *Ford,* the defendant discharged a pistol while trying to unload it and killed a victim in the apartment below. *Id.* at 602, 423 S.E.2d 255. The court held that the circumstances supported the conclusion that the defendant did not intend an assault, or any other criminal conduct, and thus his actions were not inherently dangerous to human life. *Id.* at 603, 423 S.E.2d 255.

than murder, the most serious sanctions known to law may be imposed for what in fact may have been an accidental death. *Id.* For this reason, the rule has been severely criticized for its mechanical operation, penological purposes, and its intrinsic unfairness. *Id.* (citations omitted). In sum, the felony-murder doctrine expresses a highly artificial concept that deserves no extension beyond its required application. 2 LaFave, *supra* at 233.

The current felony-murder statute technically applies to *any* felony except "criminal sexual conduct in the first or second degree with force or violence." Minn. Stat. § 609.19, subd. 2(1) (2002) (emphasis added). But the Minnesota Supreme Court has, like courts in many jurisdictions, judicially limited the application of the felony-murder rule by requiring that the predicate felony involve a special danger to human life. *See, e.g., State v. Nunn*, 297 N.W.2d 752, 754 (Minn.1980) (felony-murder rule applied to burglary in which assault was committed on resident of dwelling); *State v. Forsman*, 260 N.W.2d 160, 164 (Minn.1977) (felony-murder rule applied to distributing heroin by direct injection into the body of another). The supreme court has construed the requirement that predicate felonies involve a special danger to human life by examining whether, on the facts of the particular case, including the circumstances in which the felony was committed, there was a foreseeable danger to human life. *Nunn*, 297 N.W.2d at 753.

The majority concludes that, based on the totality of the circumstances, respondent's possession of a firearm was inherently dangerous to human life. But the majority opinion is flawed in two critical respects. First, there is nothing inherently dangerous about the offenses of felon in possession and possession of a stolen firearm. These are "status" offenses that, as

committed, do not create a special danger to human life. As the district court properly noted, each of these offenses is *malum prohibitum*—a crime because it is prohibited by statute—rather than *malum in se*—an inherently immoral act. *See, e.g.,* Minn.Stat. § 609.165, subd. 19 (2002) (providing that felons convicted of "crime of violence" precluded from shipping, transporting, possessing or receiving firearm). In contrast, traditional predicate felonies such as rape, armed robbery, and arson, are *malum in se*—offenses with direct and immediate potential to be inherently dangerous to human life. The majority, however, treats the underlying status offense as tantamount to the actual conduct that resulted in the victim's death; that is, it equates unlawful possession of a firearm with the act of placing that firearm inches from another's head. Indeed, the result reached by the majority could not be accomplished unless these two distinct concepts are blurred.

Relying on *Nunn*, the state and the majority effectively foreclose consideration of the elements of the predicate felony itself. But *Nunn* did not hold that the elements of the predicate felony are irrelevant. Rather, *Nunn* held that the court must consider *both* the elements of the predicate felony in the abstract and the circumstances under which the felony was committed to determine whether the felony-murder rule should be applied. *Nunn*, 297 N.W.2d at 754; *see also State v. Cole*, 542 N.W.2d 43, 53 (Minn.1996) (noting that "when determining if the underlying felony involves a special danger to life, *we not only consider the elements of the underlying felony in the abstract,* but also the facts of the particular case and the circumstances under which the felony was committed" (emphasis added)). Furthermore, examining only the facts and circumstances of the particular case, as the majority does, would eviscerate the *Nunn*

"special danger to human life" test, because in every felony in which a death occurs, the predicate offense would necessarily have been committed in a particularly dangerous manner. Rather, I would hold that, under the totality-of-the-circumstances test enunciated in *Nunn,* part of the consideration must necessarily be an examination of the elements of the predicate felony itself. As the district court correctly stated in this case,

> While felon in possession of a firearm creates a dangerous situation, there is a material distinction between the level of imminency and probability of the special danger to human life in that situation than in a situation involving the traditional felony predicates. The predicate felony in this case does not require an act of violence in carrying out the crime. Nor can it be persuasively argued that death would be the natural and probable consequence of the defendant's conduct in carrying out the predicate offense.

The second critical flaw in the majority's opinion is that it fails to acknowledge that the discharge of the gun, the act causing Rogers' death, was not committed in furtherance of the underlying felony of unlawful possession. Felony-murder jurisprudence has long held that

> [t]he collateral crime and the homicide must be integrated and related in a causal way * * *. The death must be caused by the felonious act. *The death need not be in furtherance of the felony, but the act that caused the death should be in furtherance of the felony.* (Emphasis added.)

*Griffin v. Commonwealth of Virginia,* 33 Va.App. 413, 533 S.E.2d 653, 659 (2000) (quotation omitted).

Here, the majority focuses on the fact that the possession of the firearm had a direct connection with the homicide. But the application of the felony-murder doctrine has traditionally been premised on proving a causal relationship between the predicate offense and the victim's death. Thus, in the "typical" armed robbery felony-murder, a defendant is held responsible for any accidental shooting of a victim that occurs *in the course of the defendant's attempt to commit the armed robbery.* This is a critical limitation on the application of the felony-murder rule, yet the majority gives it short shrift.

In support of its ruling, the majority notes that, although the common-law felonies (all *malum in se*) traditionally provided the basis for a felony-murder conviction, Minnesota courts have also used *malum prohibitum* felonies as predicate offenses. *See, e.g., State v. Cole,* 542 N.W.2d 43 (Minn.1996) (felony theft); *State v. Back,* 341 N.W.2d 273 (Minn.1983) (property offense). The majority notes that only after examining the particular circumstances of each case, did the court find that an inherent danger to human life existed. But the majority fails to recognize that the fatalities in *Cole* and *Back* resulted directly from the predicate felonies. In *Cole,* for example, there was inherent danger to human life when the defendant entered a department store, armed with a loaded gun, to return stolen goods. *Cole,* 542 N.W.2d at 46–47. The defendant eventually shot and killed a police officer to avoid arrest for the felony theft charge. *Id.* The court properly considered all of these circumstances. It is equally significant, however, that even though felony theft is not one of the traditional *malum in se* predicate felonies, the murder was committed in connection with the underlying act of theft. Application of the felony-murder rule was therefore proper. In contrast, here, respondent's use of the gun in accidentally killing the victim did not further his commission of the crime of felon in possession; it cannot

be ignored that he initially committed the predicate felony of possession before he ever came in contact with the victim. In addition, Cole purposely shot the police officer to evade arrest; here respondent accidentally shot the victim. Thus, one critical piece of the totality-of-the-circumstances test is absent here: the nexus between the homicide and the predicate felony itself.

Causation has always been an integral part of the felony-murder doctrine, yet the extension articulated by the majority today eliminates the proximate cause requirement and allows the state virtually unlimited discretion to invoke the felony-murder rule. This is particularly troubling here, where the third-degree murder charge (depraved heart) more accurately reflects respondent's conduct. Unquestionably, pointing a loaded shotgun at someone's head from a few feet away is inherently dangerous. But these very facts support and explain the prosecutor's decision to charge respondent with murder in the third degree, in violation of Minn.Stat. § 609.195(a) (2000)—a decision the trial court affirmed when it found probable cause for the third-degree murder charge. Thus, the only apparent reason for the state to charge felony-murder was to ratchet up the permissible sentence.

As former Justice Rosalie Wahl aptly noted in *Branson*, the issue presented here "is not whether the defendant can escape criminal liability, but rather, with what crimes the defendant may be properly charged under the circumstances of this case." *Branson*, 487 N.W.2d at 885. Like most murders, this was a heinous, senseless crime, and respondent should be held responsible for his conduct. Indeed, if the trial court order were affirmed, respondent would still face a third-degree murder charge, which I believe more precisely matches his unlawful conduct. What I object to is the unwarranted judicial intrusion upon what has heretofore been well-settled law, especially when our criminal code adequately encompasses the conduct at issue here. *See Branson*, 487 N.W.2d at 885–86. Therefore, I would affirm the trial court's pretrial order dismissing the unintentional murder in the second-degree (felony-murder) charge on the grounds that the "status" offenses of unlawful possession of a firearm and possession of a stolen firearm cannot serve as predicate offenses to felony-murder.