STATE of Minnesota, Appellant,

v.

Krista Ann MUCCIO, Respondent.

A15-1951

Supreme Court of Minnesota.

Filed: March 8, 2017

Lori Swanson, Attorney General, Saint Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Jennifer S. Bovitz, Assistant County Attorney, Hastings, Minnesota, for appellant.

John G. Westrick, Westrick & McDowall-Nix, PLLP, Saint Paul, Minnesota, for respondent.

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae Minnesota Attorney General.

Caroline S. Palmer, Saint Paul, Minnesota, for amicus curiae Minnesota Coalition Against Sexual Assault.

## OPINION

GILDEA, Chief Justice.

The question presented in this case is whether Minn. Stat. § 609.352, subd. 2a(2) (2016), violates the First Amendment to the United States Constitution. The State charged respondent Krista Muccio under Minn. Stat. § 609.352, subd. 2a(2), with felony communication with a child describing sexual conduct after she sent sexually explicit images and messages to a 15-year-old boy. Muccio moved to dismiss the charge, arguing that the statute facially violates the First Amendment because it proscribes a substantial amount of speech that the First Amendment protects. The district court agreed with Muccio and the court of appeals affirmed. Because we conclude that Minn. Stat. § 609.352, subd. 2a(2), is not substantially overbroad in relation to its plainly legitimate sweep, we reverse.

## FACTS

In November 2014, a father reported to law enforcement that he found inappropriate photos on his 15-year-old son's iPad. The photographs depicted a female's bare genitals, a female naked from the neck to below the waist, and a female's buttocks covered by a thong. These photos were sent to the 15-year-old through respondent Krista Muccio's Instagram account via a direct message. At the time, Muccio was 41 years old. In a statement to the police, the 15-year-old said that, after he received these pictures from Muccio, he sent her a picture of his genitals. Additionally, Muccio and the 15-year-old exchanged sexually explicit text messages. In these messages, Muccio and the 15-year-old detailed the sexual acts they wanted to engage in with each other, including fellatio and anal sex.

Based on the photos and messages described above, the State of Minnesota charged Muccio in count one with felony communication with a child describing sexual conduct, in violation of Minn. Stat. § 609.352, subd. 2a(2), and in count two with felony possession of child pornography, in violation of Minn. Stat. § 617.247, subd. 4(a) (2016). The district court dismissed count one, concluding that Minn. Stat. § 609.352, subd. 2a(2), is facially overbroad under the First Amendment and therefore unconstitutional.[1] The court of appeals affirmed. State v. Muccio, 881 N.W.2d 149, 153 (Minn. App. 2016). We granted the State's petition for review.

---

1. The district court concluded that there was sufficient evidence to establish probable cause for trial on count two, but stayed Muccio's trial proceedings pending the State's appeal of the district court's ruling on count one.

## ANALYSIS

We are asked to decide whether Minn. Stat. § 609.352, subd. 2a(2), is unconstitutionally overbroad under the First Amendment. This statute prohibits "[a] person 18 years of age or older" from "us[ing] the Internet, a computer, . . . or other electronic device capable of electronic data storage or transmission" to "engag[e] in communication with a child or someone the person reasonably believes is a child, relating to or describing sexual conduct." [2] *Id.* To violate the statute, the adult must act "with the intent to arouse the sexual desire of any person." *Id.*, subd. 2a.

The statute's definitions help determine its sweep. A "child" is "a person 15 years of age or younger." Minn. Stat. § 609.352, subd. 1(a) (2016). [3] "Sexual conduct" is "sexual contact of the individual's primary genital area, sexual penetration . . ., or sexual performance." *Id.*, subd. 1(b) (2016). "Sexual penetration" and "sexual performance" are further defined in Minn. Stat. §§ 609.341 and 617.246 (2016), respectively. [4]

On appeal, the State argues that Minn. Stat. § 609.352, subd. 2a(2), is constitutional because it targets only unprotected speech, that any overbreadth is insubstantial, and that the statute is subject to a limiting interpretation that would preserve its constitutionality. In the alternative, the State contends that the statute is narrowly tailored to achieve a compelling government interest. For her part, Muccio argues that Minn. Stat. § 609.352, subd. 2a(2), burdens a substantial amount of constitutionally protected speech and is therefore unconstitutional on its face. The parties' arguments require us to address the constitutionality of Minn. Stat. § 609.352, subd. 2a(2). We review constitutional challenges de novo. *State v. Washington-Davis*, 881 N.W.2d 531, 537 (Minn. 2016).

We begin by interpreting the statute to determine its meaning. We then address whether the statute prohibits speech that the First Amendment protects. We conclude that the statute is overbroad because it regulates some protected speech, and so

2. Throughout this opinion, we use the term "adult" to refer to "[a] person 18 years of age or older." Minn. Stat. § 609.352, subd. 2a (2016).

3. Throughout this opinion, we use the term "child" to refer to "a person 15 years of age or younger," Minn. Stat. § 609.352, subd. 1(a), or someone the adult "reasonably believes" to be that age, *id.*, subd. 2a(2).

4. "Sexual penetration" is defined as follows: any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, whether or not emission of semen occurs: (1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or (2) any intrusion however slight into the genital or anal openings: (i) of the complainant's body by any part of the actor's body or any object used by the actor for this purpose; (ii) of the complainant's body by any part of the body of the complainant, by any part of the body of another person, or by any object used by the complainant or another person for this purpose, when effected by a person in a position of authority, or by coercion, or by inducement if the child is under 13 years of age or mentally impaired; or (iii) of the body of the actor or another person by any part of the body of the complainant or by any object used by the complainant for this purpose, when effected by a person in a position of authority, or by coercion, or by inducement if the child is under 13 years of age or mentally impaired.

Minn. Stat. § 609.341, subd. 12.

"Sexual performance" is defined as "any play, dance or other exhibition presented before an audience or for purposes of visual or mechanical reproduction that uses [any person under the age of 18] to depict actual or simulated sexual conduct." Minn. Stat. § 617.246, subd. 1.

we analyze whether that overbreadth is substantial. For the reasons discussed below, we hold that the statute's regulation of protected speech is not substantial and therefore the statute does not violate the First Amendment on its face.

## I.

The first step in determining whether a statute is unconstitutionally overbroad is to interpret the statute. *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *Washington-Davis*, 881 N.W.2d at 537. Our primary purpose in interpreting a statute is to "give effect to the legislature's intent." *State v. Crawley*, 819 N.W.2d 94, 102 (Minn. 2012). When determining the meaning of a statute, we interpret words "according to their common and approved usage." Minn. Stat. § 645.08(1) (2016). If the statute regulates only unprotected speech, the statute is constitutional unless it results in " 'content discrimination unrelated to [its] distinctively proscribable content.' " *Washington-Davis*, 881 N.W.2d at 537 (alteration in original) (quoting *Crawley*, 819 N.W.2d at 109). If, however, the statute proscribes some amount of protected speech, then the statute is constitutional unless it is substantially overbroad "in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *accord Washington-Davis*, 881 N.W.2d at 537.

We turn then to interpret the statute to determine its meaning. *See Williams*, 553 U.S. at 293, 128 S.Ct. 1830; *Washington-Davis*, 881 N.W.2d at 537. The parties disagree about whether Minn. Stat. § 609.352, subd. 2a(2), implicates speech that the First Amendment protects. The parties' disagreement focuses on three different phrases within the statute: "engaging in communication," "intent to arouse," and "relating to or describing sexual conduct." Minn. Stat. § 609.352, subd. 2a (2016). We examine each disputed phrase in turn.

## A.

First, the parties dispute the interpretation of the phrase "engaging in communication with a child." Minn. Stat. § 609.352, subd. 2a(2). Muccio contends that this phrase, when properly interpreted, proscribes non-targeted mass electronic communications, including advertisements and public social-media posts, that a child happens to see even though the communication was not directed at the child. The State and the Minnesota Attorney General, as amicus curiae in support of the State, argue that the phrase "engaging in communication with a child" requires the communication to be directed at a child. We agree with the State and the Attorney General.

The phrase "engaging in communication with a child" requires the adult to direct the prohibited content at a child. The term "engage," used as an active verb in the statute, means "to take part: participate." *Merriam Webster's Collegiate Dictionary* 383 (10th ed. 2001). "Communication" means "an act or instance of transmitting." *Id.* at 232. Finally, in the context of the statute, the term "with" is used as "a function word to indicate the object of attention, behavior, or feeling." *Id.* at 1354. Applying these definitions, we conclude that the statute prohibits an adult from participating in the electronic transmission of information relating to or describing sexual conduct if the intended target or object of the transmission is a child.

Contrary to Muccio's argument, therefore, the statute does not proscribe non-targeted mass electronic communications, such as posting non-targeted social-

media posts that a child happens to view. Similarly, Internet social-media posts with a more limited audience, such as a post that can only be viewed by a person's Facebook friends or a message posted on an Internet message board, are not directed at a child simply because the people who could possibly view such a post include children. Instead, for a transmission to be directed at a child, the child must be the object of the adult's attention. In other words, to engage in communication with a child, the adult must take some affirmative act to specifically select or designate the child as a recipient of the transmission.

## B.

We turn next to the parties' second interpretive disagreement, which involves the statute's intent requirement. This part of the statute prohibits electronic communications if the adult acts "with the intent to arouse the sexual desire of any person." Minn. Stat. § 609.352, subd. 2a. Muccio contends that when the statute requires an "intent to arouse any person," the object of that intent is not restricted to the child or the adult involved in the communication. The State and the Attorney General respond by arguing that the phrase "any person" can be limited to "any person involved in the communication." According to the Attorney General, this interpretation is consistent with the Legislature's purpose in enacting the statute and the structure of the statute. We agree with Muccio.

The phrase " '[w]ith intent to' ... means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2016). The statute requires that the adult's specific intent to sexually arouse must be directed toward "any person." Minn. Stat. § 609.352, subd. 2a. The

plain meaning of "any person" includes anyone, not just those individuals directly involved in the communication. *See Merriam Webster's Collegiate Dictionary, supra*, at 53 (defining "any" as "one or some indiscriminately of whatever kind"). The Attorney General's interpretation therefore is contrary to the statute's plain meaning.

The Attorney General's reliance on the statute's structure to support its interpretation is also misplaced. Section 609.352, subdivision 2a, is divided into four parts. The first part identifies the methods of communication the subdivision covers and contains the requirement that the adult act with the specific intent to sexually arouse "any person." Minn. Stat. § 609.352, subd. 2a. The following three parts identify specific actions the statute prohibits. Specifically, in addition to the prohibition in Minn. Stat. § 609.352, subd. 2a(2), the other two parts prohibit the solicitation of a child to engage in sexual conduct and the distribution of sexually explicit material to a child, Minn. Stat. § 609.352, subd. 2a(1), (3).

The Attorney General argues that the first part of subdivision 2a uses the phrase "any person" as a kind of placeholder for the object of the required intent. Because subdivision 2a, in clauses (1) to (3), goes on to prohibit specific actions the adult directs at a child, the Attorney General argues that the intent to arouse must be directed at the child as well. Based on this interpretation, the Attorney General concludes that "any person" refers only to the specific people (i.e., the adult and the child) mentioned in Minn. Stat. § 609.352, subd. 2a(1)-(3), which contains the three prohibited actions.

■ The Attorney General's argument incorrectly interprets clauses (1) to (3) in subdivision 2a to modify the intent required by the statute. The statute contains

no language that suggests that the clauses act to change the intent requirement of the statute. Furthermore, it is possible for an adult to engage in communication with a child while also having the intent to arouse someone who is not directly involved in the communication. In sum, the plain language of the statute compels the conclusion that the "intent to arouse" requirement applies to any person, not just the adult and child engaging in the communication.

### C.

The third interpretive disagreement concerns the meaning of the phrase "relating to or describing sexual conduct." Minn. Stat. § 609.352, subd. 2a(2). The statute defines "sexual conduct" to include "sexual contact of the individual's primary genital area" and "sexual penetration as defined in section 609.341." Minn. Stat. § 609.352, subd. 1(b). The term "sexual penetration" is defined as including sexual intercourse, oral sex, or anal intercourse when "committed without the complainant's consent," unless consent is not a defense. Minn. Stat. § 609.341, subd. 12.

Based on the phrase "relating to or describing sexual conduct," Minn. Stat. § 609.352, subd. 2a(2), Muccio argues that the statute proscribes all communications that reference sexual conduct involving anyone. The State argues that the term "sexual conduct" is limited to communications that describe or relate to sexual conduct involving only the adult or the child involved in the communication. The State bases this argument on the fact that the definition of "sexual conduct" refers to the *"individual's* primary genital area," Minn. Stat. § 609.352, subd. 1(b) (emphasis added), and encompasses sexual penetration committed "without the *complainant's* consent," Minn. Stat. § 609.341, subd. 12 (emphasis added). The State reads the terms "individual" and "complainant" to

mean only the specific adult or child. On this interpretive issue, Muccio has the better argument.

The use of the terms "individual" and "complainant" does not limit the definition of "sexual conduct" to actions involving the specific adult or child. Nothing in section 609.352, subdivision 2a, suggests that the individual referenced is limited to the adult or the child involved in the communication. "Individual" is a more generic term than the specific references to an adult and child in the statute.

Likewise, the term "complainant" as used in the definition of "sexual penetration" in Minn. Stat. § 609.341, subd. 12, is not necessarily limited to the child involved in the communication, contrary to what the State argues. The term "complainant" means the "person alleged to have been subjected to criminal sexual conduct." Minn. Stat. § 609.341, subd. 13. But nothing in the statute at issue here— Minn. Stat. § 609.352, subd. 2a—suggests that the child involved in the communication must be the person subjected to criminal sexual conduct. Instead, when Minn. Stat. § 609.352, subd. 1(b), references the definition of "sexual penetration" from Minn. Stat. § 609.341, it serves to identify specific types of actions that would constitute "sexual conduct," regardless of the persons engaged in the actions. As a result, the prohibited communication need not describe or relate to sexual conduct involving either the child or the adult involved in the communication.

In sum, Minn. Stat. § 609.352, subd. 2a(2), prohibits an adult from participating in the electronic transmission of information relating to or describing the sexual conduct of any person, if the communication was directed at a child, and the adult sending the communication acted with the specific intent to arouse the sexual desire of any person.

## II.

Having determined the meaning of Minn. Stat. § 609.352, subd. 2a(2), we next examine whether the statute prohibits speech that the First Amendment protects. The State argues that the statute regulates only speech integral to criminal conduct and speech that is obscene, which are categories of speech that the First Amendment does not protect. *See United States v. Stevens*, 559 U.S. 460, 468, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010). Muccio counters that the prohibited speech is not necessarily integral to criminal conduct or obscene and therefore she contends that the statute regulates protected First Amendment speech. We address these issues in turn.

## A.

We turn first to the State's argument that the statute does not violate the First Amendment because the speech the statute prohibits is integral to criminal conduct. First Amendment protections do not extend to speech used " 'as an integral part of conduct in violation of a valid criminal statute.' " *State v. Washington-Davis*, 881 N.W.2d 531, 538 (Minn. 2016) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949)). Speech is integral to criminal conduct when it "is intended to induce or commence illegal activities," such as "conspiracy, incitement, and solicitation." *United States v. Williams*, 553 U.S. 285, 298, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Both the Supreme Court and our court have addressed this category of unprotected speech.

In *Williams*, the Supreme Court rejected a First Amendment challenge to a federal statute criminalizing "offers to provide or requests to obtain" child pornography, concluding that the statute was constitutional because it regulated speech integral to criminal conduct. 553 U.S. at 297-98, 128 S.Ct. 1830. The Court held that the statute prohibited speech integral to criminal conduct because the statute proscribed offers to provide or obtain material that was illegal. *Id.* at 297, 128 S.Ct. 1830. In reaching its decision, the Court noted that "there remains an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality." *Id.* at 298-99, 128 S.Ct. 1830; *see also Brandenburg v. Ohio*, 395 U.S. 444, 449, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (holding that a law was unconstitutional because it prohibited the abstract advocacy of criminal acts). The Court concluded that the statute at issue in *Williams* confined its regulation to speech integral to criminal conduct because it did not "prohibit advocacy of child pornography." 553 U.S. at 299, 128 S.Ct. 1830.

Similarly, in *Washington-Davis*, we rejected a facial challenge to a statute prohibiting the promotion of prostitution, holding that the statute is constitutional because the statute's regulation of speech is tightly focused on speech integral to criminal conduct. 881 N.W.2d at 538. The statute at issue prohibits "solicit[ing] or induc[ing] an individual to practice prostitution" and "promot[ing] the prostitution of an individual." Minn. Stat. § 609.322, subd. 1a(1)-(2) (2016). We concluded that the speech at issue is "directly linked to and designed to facilitate the commission of a crime." *Washington-Davis*, 881 N.W.2d at 538. In concluding that the statute prohibits speech integral to criminal conduct, we observed that the statute "does not reach abstract advocacy of prostitution or general discussions about prostitution untethered to actual criminal behavior." *Id.*

In contrast to *Williams* and *Washington-Davis*, the Supreme Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234,

239, 256, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), struck down a law that extended the federal prohibition against child pornography to "sexually explicit images that appear to depict minors but were produced without using any real children." There, the Court concluded that although the images proscribed by the statute "can lead to actual instances of child abuse, ... the causal link is contingent and indirect. The harm does not necessarily follow from the speech, but depends upon some unqualified potential for subsequent criminal acts." *Id.* at 250, 122 S.Ct. 1389.

Much of the speech that Minn. Stat. § 609.352, subd. 2a(2), prohibits is similar to the prohibited speech in *Williams* and *Washington-Davis*. The statute requires the adult to direct a communication relating to or describing sexual conduct at a child with the intent to arouse sexual desire. The State argues that in most of these instances, communications falling within the purview of the statute are part of a process called "grooming." "Grooming" is a process sexual predators use to shape a child's perspective and lower the child's inhibitions with respect to later criminal sexual acts. *See* Daniel Pollack & Andrea MacIver, *Understanding Sexual Grooming in Child Abuse Cases*, 34 Child L. Prac. 161, 161 (2015). As part of the grooming process, the offender typically desensitizes the child to sexual conduct by exposing the child to sexual content. *See id.* at 166. Through the grooming process, the offender increases the likelihood that the child will cooperate with the adult and reduces the likelihood that the child will disclose the adult's wrongful acts. *See id.* at 161, 166. After desensitizing the child to sexual content, the offender typically solicits the child to engage in some type of sexual conduct that may include sexual intercourse, sex trafficking, or child pornography. *See id.* at 166. Although

communications made during the grooming process occur before the criminal acts of criminal sexual conduct, sex trafficking, or the creation of child pornography, the adult communicates the sexual content with the purpose of having the child engage in later criminal activity. *See id.* In this context, the communication is both linked to and designed to facilitate the commission of the later crime. *See Washington-Davis*, 881 N.W.2d at 538 (concluding that a statute criminalizing speech that was "directly linked to and designed to facilitate the commission of a crime" prohibited speech that was integral to criminal conduct). We agree with the State that when grooming is done for the purpose of later using the child in sexual conduct, it resembles solicitation of the child, and under *Williams*, such solicitation falls outside First Amendment protections. 553 U.S. at 298, 128 S.Ct. 1830.

And unlike the speech at issue in *Free Speech Coalition*, in which the government argued that the speech was connected to enticing a child to later engage in criminal activity, *see* 535 U.S. at 251-53, 122 S.Ct. 1389, in this case the later criminal activity is the goal of the speech. Specifically, in *Free Speech Coalition*, the government argued that the statute was linked to preventing later crime because the virtual child pornography prohibited by the statute could arouse the interests of a sexual predator, who may later abuse children. 535 U.S. at 253, 122 S.Ct. 1389. The Court determined that the causal link between the virtual child pornography and the later criminal activity or harm to children was "contingent and indirect." *Id.* at 250, 122 S.Ct. 1389. Unlike the speech prohibited in *Free Speech Coalition*, the grooming behavior prohibited by Minn. Stat. § 609.352, subd. 2a(2), is targeted at a specific child with the goal of enticing the child to engage in later criminal acts. In this way, grooming is integral to criminal conduct,

unlike the speech prohibited by the statute at issue in *Free Speech Coalition.*

Even though much of the conduct prohibited by the statute, including grooming, is integral to criminal conduct, the statute also prohibits conduct that is not necessarily tied directly to criminal conduct. For example, an adult could communicate with a child about the adult's sexual practices or about sexual practices in general with the intent to arouse herself but without the intent to take further criminal action toward or involving the child. Because the statute prohibits this communication, even without an intent to solicit the child, the statute purports to regulate activity that is one step removed from criminal conduct. As this example illustrates, in some instances, the sweep of Minn. Stat. § 609.352, subd. 2a(2), bears some similarity to the statute at issue in *Free Speech Coalition.*

■■■ Thus, although much of the speech that falls within the scope of Minn. Stat. § 609.352, subd. 2a(2), is integral to criminal conduct because it involves grooming aimed at soliciting a specific child, and therefore falls outside First Amendment protections, we acknowledge that the statute also covers some speech that may not be integral to criminal conduct.

B.

■■■ We next turn to the State's contention that Minn. Stat. § 609.352, subd. 2a(2), regulates obscene speech. Similar to speech integral to criminal conduct, First Amendment protections do not extend to obscenity. *Miller v. California,* 413

U.S. 15, 23, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). A work is generally obscene if:

> (a) ... the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) ... the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) ... the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. 2607 (citations omitted) (internal quotation marks omitted). When applying this test to speech directed toward children, the Court has held that statutes may protect "minors from the influence of literature that is not obscene by adult standards." *Sable Commc'ns of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).[5]

Applying the *Miller* standard of obscenity, we conclude that the speech Minn. Stat. § 609.352, subd. 2a(2), proscribes will often be obscene. The statute is directed at prohibiting works that appeal to prurient interests. We have noted that the Supreme Court has defined a "prurient interest" in sex as a "morbid, shameful interest in sex." *State v. Davidson,* 481 N.W.2d 51, 59 (Minn. 1992) (citing *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504-05, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). Minnesota Statutes § 609.352, subd. 2a(2), prohibits communications an adult directs at a child relating to sexual conduct that are made with the intent to arouse sexual desire. Communications of the sort proscribed by Minn. Stat. § 609.352, subd. 2a(2), are likely designed by the adult to arouse the child's sexual desire for the

5. In addition to obscene speech, some communications Minn. Stat. § 609.352, subd. 2a(2), regulates will include child pornography, as is charged in this case. To the extent that these communications include child por-
nography, they are also not protected by the First Amendment. *New York v. Ferber,* 458 U.S. 747, 764-65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (holding that child pornography is not protected speech).

adult, or the adult's sexual desire for the child. Sexual desire between an adult and a child is clearly a "shameful interest in sex." *Davidson,* 481 N.W.2d at 59. The statute's intent requirement—mandating the intent to arouse—indicates that many communications falling within its scope will appeal to prurient interests.

■■■ The second prong of the *Miller* test, 413 U.S. at 24, 93 S.Ct. 2607, is also often met because many of the communications Minn. Stat. § 609.352, subd. 2a(2), covers will depict sexual acts in a patently offensive way. As stated above, what is offensive is examined differently when, as in this case, the speech is aimed at children. *See Ginsberg v. New York,* 390 U.S. 629, 632, 634-35, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (upholding a ban on the sale of magazines depicting nudity to persons under the age of 17, even though the magazines regulated by that statute were not obscene for adults); *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 251-52, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("The Government, of course, may punish adults who provide unsuitable materials to children...."). Here, the communication must relate to or describe sexual conduct, and the communication must be made with the intent to arouse sexual desire. It is a crime for an adult to engage in any sexual conduct with a child. *See* Minn. Stat. §§ 609.342-.345 (2016). And such sexually explicit speech that is designed to cause sexual arousal is patently offensive when an adult aims the speech at a child. *Cf. FCC v. Pacifica Found.,* 438 U.S. 726, 747, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (plurality opinion) ("It is a characteristic of speech such as this that both its capacity to offend and its 'social value' ... vary with the circumstances. Words that are commonplace in one setting are shocking in another."); *Free Speech Coal.,* 535 U.S. at 251-52, 122 S.Ct. 1389.

Finally, speech subject to Minn. Stat. § 609.352, subd. 2a(2), will often meet the final prong of the *Miller* test: that the communication be without literary, artistic, political, or scientific merit. 413 U.S. at 24, 93 S.Ct. 2607. Because the communication must be made with the specific intent to arouse, Minn. Stat. § 609.352, subd. 2a, many communications falling within the statute will lack literary, artistic, political, or scientific merit. *See Scott v. State,* 299 Ga. 568, 788 S.E.2d 468, 476 (2016) ("[I]t is difficult to envision a scenario in which an adult's sexually explicit online communication with a child younger than 16, made with the intent to arouse or satisfy either party's sexual desire, would ever be found to have redeeming social value."). Muccio argues, and the court of appeals concluded, however, that Minn. Stat. § 609.352, subd. 2a(2), would prohibit large swaths of speech with literary, artistic, political, or scientific value. *Muccio,* 881 N.W.2d at 157. Muccio argues that the statute encompasses literary works like *Lolita* and *Lady Chatterly's Lover,* famous paintings like *Girl Diver and Octopi,* scenes from television series like *True Blood* and *Game of Thrones,* and music and music videos like *Raspberry Beret* by Prince and Miley Cyrus's *BB Talk* that are widely distributed on the Internet and could be seen by children.

Two provisions in the statute prevent such a sweeping prohibition. First, the statute requires the adult to direct the communication *at* a child. Minn. Stat. § 609.352, subd. 2a(2). Non-targeted mass Internet communications, such as music videos, advertisements, and television series, therefore, would not fall within the purview of the statute. Second, the statute requires the adult to act with the specific intent to arouse the sexual desire of any person. Minn. Stat. § 609.352, subd. 2a. Those creating and distributing the mass

communications of the sort Muccio outlines would likely not act with the requisite intent. But we acknowledge that the statute does not specifically require that the content of the communication lack literary, artistic, political, or scientific value. Because communications the statute prohibits are not necessarily limited to those without literary, artistic, political, or scientific value, the statute regulates some speech that is not obscene. To the extent that this non-obscene speech does not fall within another category of unprotected speech, like speech integral to criminal conduct or child pornography, it is protected by the First Amendment.

■ In summary, we hold that Minn. Stat. § 609.352, subd. 2a(2), regulates some speech that the First Amendment protects. But this regulation of protected speech occurs only if the prohibited speech is not integral to criminal conduct, is not obscene, and does not fall within another category of unprotected speech like child pornography.

### III.

■ Having concluded that Minn. Stat. § 609.352, subd. 2a(2), regulates some speech that the First Amendment protects, we must next determine whether the statute regulates a substantial amount of protected speech. The requirement that the overbreadth be substantial "stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."). Additionally, the "law's application to protected speech [must] be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks*, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (citation omitted).

In conducting our overbreadth analysis, the Supreme Court's consideration of First Amendment overbreadth challenges to federal statutes intended to protect children is helpful. In *United States v. Williams*, the Supreme Court held that a law restricting offers to provide or requests to obtain child pornography might apply to constitutionally protected speech. 553 U.S. 285, 302-03, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The example the Court discussed was that the statute may have applied to "documentary footage of atrocities being committed in foreign countries, such as soldiers raping young children." *Id.* at 302, 128 S.Ct. 1830. But because "the vast majority of [the statute's] applications" were constitutional restrictions on speech integral to criminal conduct, the Court concluded that the statute was not facially invalid. *Id.* at 303, 128 S.Ct. 1830. To the extent protected speech was shown to fall within the statute's sweep, the Court determined that such challenges should go forward on an as-applied basis. *Id.* at 302, 128 S.Ct. 1830.

On the other hand, in *Reno v. American Civil Liberties Union*, the Supreme Court held that a statute was overbroad in its prohibition of a "knowing transmission of obscene or indecent messages to any recipient under 18 years of age" as well as the "knowing sending or displaying of patently offensive messages in a manner that is available to a person under 18 years of age." 521 U.S. 844, 859, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The Court concluded

that this regulation was substantially overbroad because it prohibited "discussions about prison rape or safe sexual practices, artistic images that include nude subjects, and arguably the card catalogue of the Carnegie Library." *Id.* at 878, 117 S.Ct. 2329.

■ With the principles from *Williams* and *Reno* in mind, we turn to the statute at issue here. The legitimate sweep of Minn. Stat. § 609.352, subd. 2a(2), is to protect children from sexual abuse and exploitation and from exposure to harmful sexual material. *See Free Speech Coal.*, 535 U.S. at 244, 122 S.Ct. 1389 ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of decent people."); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) ("We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards."). And because of its specific-intent requirement, *see State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012), the statute does not target broad categories of speech.

■ Rather, the statute intrudes upon constitutionally protected speech only in a narrow set of circumstances—only insofar as the prohibited communication is not integral to criminal conduct, is not obscene, and does not fall within another category of unprotected speech. *Cf. United States v. Dean*, 635 F.3d 1200, 1205-06 (11th Cir. 2011) (concluding that a statute was not substantially overbroad because it regulated speech that was obscene or child pornography and the material outside the scope of those categories of unprotected speech was insubstantial). For example, the plain terms of Minn. Stat. § 609.352, subd. 2a(2), prohibit an adult from using

the Internet to send a child sexually graphic, but artistic, pictures with the specific intent to sexually arouse any person even if the adult does not also plan to pursue further criminal actions with the child. Such communications seem unlikely, however, given the statute's requirement that the adult target a specific child with the communication relating to sexual conduct. *See id.* And "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Williams*, 553 U.S. at 303, 128 S.Ct. 1830 (quoting *Taxpayers for Vincent*, 466 U.S. at 800, 104 S.Ct. 2118).

The specific intent requirement also makes this case factually distinguishable from *Reno*. The federal statute in *Reno* contained no requirement that the indecent or offensive messages be transmitted with the intent to arouse sexual desires. *See* 521 U.S. at 859-60, 117 S.Ct. 2329. Here, the specific intent requirement ensures that Minn. Stat. § 609.352, subd. 2a(2), would not prohibit discussions about safe sexual practices, artistic images that include nude subjects, or library card catalogues, except in the unlikely circumstance in which the adult acts with the intent to arouse sexual desires.

■ In our view, there will be some, but relatively few, communications prohibited under the statute that would be entitled to First Amendment protection. *See Osborne v. Ohio*, 495 U.S. 103, 112, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) ("Even where a statute at its margins infringes on protected expression, 'facial invalidation is inappropriate if the "remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct...."'" (quoting *New York v. Ferber*, 458 U.S. 747, 770 n.25, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982))). Those communications that fall within this nar-

row sliver of speech will be sufficiently limited that they may be protected through as-applied challenges. *See Washington-Davis*, 881 N.W.2d at 540 (refusing to strike down a promotion of prostitution statute on the grounds that it could be applied to people working in the adult film industry and explaining that "the statute's application to those involved in the making of pornography should be resolved, if it ever arises, through an as-applied challenge"). Invalidation of a statute for substantial overbreadth is "strong medicine" that should be used "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *see also Williams*, 553 U.S. at 292, 128 S.Ct. 1830 ("[W]e have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's

plainly legitimate sweep."). Given the relatively few protected communications that the statute regulates, we hold that Minn. Stat. § 609.352, subd. 2a(2), is not substantially overbroad.[6]

## CONCLUSION

Based on our analysis, we hold that Minn. Stat. § 609.352, subd. 2a(2), is not facially unconstitutional under the First Amendment. Accordingly, we reverse the decision of the court of appeals.

Reversed.

---

**6.** Because we have concluded that Minn. Stat. § 609.352, subd. 2a(2), is not substantially overbroad, we have no need to determine whether the statute is narrowly tailored to achieve a compelling government interest or whether a limiting interpretation would preserve the statute's constitutionality.