ISSUES
I. Was the stipulated evidence presented at trial sufficient to support appellant's third-degree murder conviction?
II. Was the district court's determination that appellant failed to establish the mental-illness defense clear error?
ANALYSIS
I.
Appellant challenges the sufficiency of the evidence supporting her conviction of third-degree murder. Appellant argues that the state failed to prove that she acted "without intent to effect the death of any person" and that her conviction must be reversed. Appellant argues that because the district court found that she acted with the intent to kill herself, she cannot be guilty of third-degree murder. Where "the meaning of a criminal statute is intertwined with the issue of whether the State proved beyond a reasonable doubt that the defendant violated the statute, it is often necessary to interpret a criminal statute when evaluating an insufficiency-of-the-evidence claim." State v. Vasko , 889 N.W.2d 551, 556 (Minn. 2017). Because the meaning of the statute is intertwined with appellant's sufficiency-of-the-evidence challenge, we must interpret Minn. Stat. § 609.195(a) (2014).
A.
When a sufficiency-of-the-evidence claim involves the question of whether the appellant's conduct meets the statutory definition of an offense, we are presented with a question of statutory interpretation we review de novo. State v. Hayes , 826 N.W.2d 799, 803 (Minn. 2013). Minnesota Statutes section 609.195(a) provides:
Whoever, without intent to effect the death of any person, causes the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years.
*534 Appellant argues that the phrase "without intent to effect the death of any person" is an element of third-degree murder. We agree. When the legislature "includes the absence of a fact in the definition of an offense, the absence of that fact is generally treated as an element of the offense." State v. Burg , 648 N.W.2d 673, 678 (Minn. 2002). Although this rule has not been universally applied, "our more recent cases have consistently treated such language as creating an element of an offense." Id. at 678-79 (first citing In re Welfare of L.Z. , 396 N.W.2d 214, 218 (Minn. 1986) ; then citing State v. Brechon , 352 N.W.2d 745, 750 (Minn. 1984) ). The legislature's decision to embed the phrase "without intent to effect the death of any person" in the definition of the offense of third-degree murder demonstrated its intent to include the absence of that intent as one of the facts necessary for conviction. See Burg , 648 N.W.2d at 678.
The lack of intent to effect the death of any person is integral to the definition of third-degree murder because the statute was "intended to cover cases where the reckless or wanton acts of the accused were committed without special regard to their effect on any particular person or persons ; the act must be committed without a special design upon the particular person or persons with whose murder the accused is charged." State v.Wahlberg , 296 N.W.2d 408, 417 (Minn. 1980) (emphasis added) (first citing State v. Hanson , 286 Minn. 317, 328-29, 176 N.W.2d 607, 614-15 (1970) ; then citing State v. Lowe , 66 Minn. 296, 68 N.W. 1094 (1896) ). "Third-degree murder occurs when death is caused without intent to kill and 'excludes a situation where the animus of [a] defendant is directed toward one person only.' " Stiles v. State , 664 N.W.2d 315, 321 (Minn. 2003) (quoting Hanson , 286 Minn. at 329, 176 N.W.2d at 614-15 ) (citation omitted). Put differently, the statute covers circumstances where the defendant acts with a general recklessness and without the intent to effect the death of any person, including the specific victim of that reckless action. Accordingly, we conclude that the state must prove as an element that a defendant acted without the intent to effect the death of any person to sustain a conviction for third-degree murder.
The state, relying on State v. Cole , 542 N.W.2d 43 (Minn. 1996), argues that the third-degree murder statute must be read along with the entire regime of homicide statutes and that the language "without intent to effect the death of any person" is not an element of the crime but instead relieves the state of the burden of proving specific intent without requiring affirmative proof that there was no such intent. But Cole addressed only whether guilty verdicts for first-degree and second-degree intentional murder were legally inconsistent with a verdict for second-degree felony murder. 542 N.W.2d at 45. There, the supreme court interpreted the felony-murder statute, which provided that whoever "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense" is guilty of murder in the second degree. Minn. Stat. § 609.19(2) (1994). The supreme court concluded that felony murder "does not require proof of a specific mental element" and that "[l]ack of intent is not an element of second-degree felony murder." Cole , 542 N.W.2d at 51. The Cole court reasoned that lack of intent was not an element because "[t]he 'felony murder rule' allows one whose conduct brought about an unintended death in the commission of a felony to be found guilty of murder by imputing malice when there is no specific intent to kill." Id. (quoting State v. Branson , 487 N.W.2d 880, 881-82 (Minn. 1992) ). But felony *535 murder is an "anomaly in the law of homicide" because malice is imputed from "crimes qualitatively different from and far less severe than murder." Branson , 487 N.W.2d at 882. "With the exception of involuntary manslaughter ..., it is the only form of homicide not requiring proof of a specific mental element." Id. Unlike felony murder, the mental state required for third-degree murder is not imputed from some other extraneous act to the killing. Instead, third-degree murder requires proof that the defendant's reckless act, committed while evincing a depraved mind and without the intent to effect the death of any person, caused the death of another.
The different degrees of homicide recognize less culpable mental states. A defendant "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2016). "In Minnesota, every lesser degree of murder is intended by § 609.04 to be characterized as an included offense." State v. Hannon , 703 N.W.2d 498, 509 (Minn. 2005). Intentional killings are punished under Minn. Stat. § 609.185(a)(1) (2014) (prohibiting a killing done "with premeditation and with intent to effect the death of the person or of another") and Minn. Stat. § 609.19, subd. 1(1) (Supp. 2015) (prohibiting a killing "with intent to effect the death of that person or another, but without premeditation"). A defendant who acts with the intent to cause death may be punished under the laws prohibiting intentional killings, but cannot be guilty of third-degree murder. Third-degree murder requires proof that the defendant acted "without intent to effect the death of any person," meaning the state must prove that the defendant acted recklessly, without any special regard for the effect of their actions on any particular person or persons and without any special design on the victims of their actions. Wahlberg , 296 N.W.2d at 418.
B.
Appellant argues that the state failed to prove that she lacked the intent to effect the death of "any person" because the district court found that her actions were an apparent suicide attempt and the plain meaning of "any person" extends to all persons. The state argues that it is unclear whether "any person" includes those charged with the offense and thus Minn. Stat. § 609.195(a) is ambiguous.[2]
Our goal in interpreting statutes "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2016). "When determining the meaning of a statute, we interpret words according to their common and approved usage." State v. Muccio , 890 N.W.2d 914, 920 (Minn. 2017). "We are to read and construe a statute as a whole" and "give effect to all of its provisions" so that "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000) (citation omitted). "If a statute is unambiguous, then we must apply the statute's plain meaning."
*536 Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010). If the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we may consider the canons of statutory construction to ascertain its meaning. Hayes , 826 N.W.2d at 804. But if the "words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16.
The plain meaning of the phrase "any person" extends to any and all persons generally, including the actor. The word "any" is an adjective meaning "one, some, every, or all without specification." The American Heritage College Dictionary 61 (3d ed. 1994). Accordingly, "any person" in Minn. Stat. § 609.195(a) means any person-without specification-not any other person or any person excluding the appellant. This interpretation is supported by a recent supreme court decision, which interpreted the phrase "any person" to include "anyone, not just those individuals directly involved" in the conduct at issue relying on a definition of "any" as "one or some indiscriminately of whatever kind." Muccio , 890 N.W.2d at 921 (quoting Merriam-Webster's Collegiate Dictionary 53 (10th ed. 2001) ). In Muccio , the statute at issue prohibited the electronic solicitation of children "with the intent to arouse the sexual desire of any person" and the supreme court concluded that "any person" was not confined to any person involved in the communication but rather to any person generally, in part because "it is possible for an adult to engage in communication with a child while also having the intent to arouse someone who is not directly involved in the communication." 890 N.W.2d at 922. Here, as in Muccio , the phrase "any person" extends to any and all persons indiscriminately-including appellant.
The state asserts that the meaning of "any person" is ambiguous and argues that the third-degree murder statute must be read in the context of all other homicide statutes under the related-statutes canon. The related-statutes canon "allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language." State v. Thonesavanh , 904 N.W.2d 432, 435 (Minn. 2017). But we may only resort to the canons of construction if a statute is ambiguous. Id. And because the plain meaning of "any person" is not ambiguous, we need not resort to the canons of construction. Accordingly, we conclude that lack of intent to effect the death of any person is an element of third-degree murder and that the plain meaning of the phrase "any person" extends to all persons, including the actor.
We now turn to whether the evidence presented at the guilt phase of appellant's trial was sufficient to support a third-degree murder conviction. Our review is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction," was sufficient to allow the fact-finder to reach the verdict it did. State v. Webb , 440 N.W.2d 426, 430 (Minn. 1989). We must assume that the fact-finder "believed the state's witnesses and disbelieved any evidence to the contrary." State v. Moore , 438 N.W.2d 101, 108 (Minn. 1989). And we will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the appellant was guilty of the charged offense. Bernhardt v. State , 684 N.W.2d 465, 476-77 (Minn. 2004).
To sustain a conviction for third-degree murder, the state was required to prove that: (1) T.J.L. died; (2) appellant's eminently *537 dangerous act caused T.J.L.'s death; (3) the dangerous act was not intended to effect the death of any person; (4) appellant possessed a depraved mind without regard for human life when she perpetrated the act; and (5) the offense occurred on January 28, 2016 in Hennepin County. Minn. Stat. § 609.195(a).
The evidence produced at trial was not sufficient to prove that appellant acted without the intent to effect the death of any person when she crashed her car into the back of the parked city vehicle. On the contrary, the district court found that the evidence proved that appellant intended to kill herself. The district court found that appellant's "driving was reckless and eminently dangerous to others" and that she "perpetrated an act eminently dangerous to others that caused the death of T.J.L." The district court further found that there was no evidence that she targeted the truck or "intended to kill anyone in particular" but that "[h]er driving conduct was an apparent suicide attempt" and that she "decided that she was going to harm herself and she wanted to die." The district court concluded, "[i]t's clear the Defendant didn't intend to kill anyone but herself ...." Put differently, the evidence proved that appellant acted without the intent to kill T.J.L. or any other person, but that she intended to effect her own death. Because "any person" extends to any person-including the actor-the evidence produced at trial was insufficient to prove that appellant committed third-degree murder, as defined in Minn. Stat. § 609.195(a). Accordingly, we reverse appellant's conviction of third-degree murder and remand for a sentence to be imposed on the conviction of criminal vehicular homicide. See State v. Pflepsen , 590 N.W.2d 759, 766 (Minn. 1999).
We acknowledge that applying the plain language of the statute leads to the unusual result that a person who is found to have acted with suicidal intent cannot be held criminally responsible for the death of another under Minn. Stat. § 609.195(a). However, "[i]t is the exclusive province of the legislature to define by statute what acts shall constitute a crime." State v. Forsman , 260 N.W.2d 160, 164 (Minn. 1977). And "[i]t is the duty of this court to apply the law as written by the legislature." Int'l Bhd. of Elec. Workers, Local No. 292 v. City of St. Cloud , 765 N.W.2d 64, 68 (Minn. 2009). If the legislature wishes to avoid this outcome in the future, it may simply amend Minn. Stat. § 609.195(a) to read "without intent to effect the death of any other person." We emphasize that the issue before us is not whether appellant can escape criminal liability for her actions, but rather with what crimes appellant may be properly charged and convicted under the unique and tragic circumstances of this case.
II.
Appellant also argues that the district court erred in finding that she did not establish the defense of mental illness. Specifically, appellant argues that the district court improperly relied on evidence about her state of mind obtained after the crash and by "conflating" legal and moral wrongfulness.
A criminal defendant is presumed sane and responsible for her acts and bears the burden of proving a mental-illness defense by a preponderance of the evidence. Minn. Stat. § 611.025 (2016). The mental-illness defense is a question of fact to be resolved by the fact-finder, and "a finding that a defendant failed to meet his or her burden to prove a mental-illness defense should not be disturbed unless it is clearly erroneous." State v. Roberts , 876 N.W.2d 863, 868 (Minn. 2016). "A factual finding is clearly erroneous if it does not *538 have evidentiary support in the record or if it was induced by an erroneous view of the law." Id. Broad deference is given to the fact-finder in determining the weight to assign expert psychiatric testimony and the fact-finder "is not bound by expert psychiatric testimony and may reject it entirely." Id.
The district court found that appellant failed to establish the defense of mental illness for the following five reasons: (1) appellant's driving conduct prior to the crash indicated a moral valuation for other's lives because she took side streets and slowed and looked before running red lights and rejected the claim that this was done in some form of mental illness inspired autopilot; (2) leaving money at the store indicated an "understanding of ... values related to the concept of morally wrong"; (3) arriving, parking, and departing the parking lot without hitting pedestrians or cars indicated that appellant "was generally able [to] behave in a somewhat rational manner"; (4) appellant's ability to navigate the steady stream of traffic outside the parking lot and before the crash "strongly suggests [appellant]'s cognitive abilities were not so severely impaired to the point of being unable to expediently recognize, process, and respond to the surrounding environment" because "[s]uch faculties ought to have also been available for moral reasoning, or allowed [appellant] to recognize her irrational behavior"; and (5) the district court found evidence of appellant's moral understanding in the "fact that she chose to crash into a stationary pickup truck on the side of the road ... and avoided all of the obviously occupied moving vehicles she encountered on the road that day." The district court's determination that appellant failed to meet her burden was not clearly erroneous.
The district court properly considered evidence of appellant's knowledge that her actions were legally wrong as evidence that she knew her actions were morally wrong. "Legal and moral wrongfulness are not mutually exclusive concepts, but rather overlap to a great extent, because laws defining criminal activity are largely reflective of the moral standards of society" and thus a violation of the law can be "reasonably interpreted to indicate knowledge of a moral wrong." Roberts , 876 N.W.2d at 870 n.7. Further, the district court found that appellant's "ability to make relatively safe, or at least successful, choices in navigating the way to her proposed death suggests moral recognition" because she "didn't intend to kill anyone but herself" and "didn't slam into another moving vehicle." The district court found that appellant's decision to avoid other vehicles and collide with the city maintenance vehicle choices reflected "some understanding of moral consequences" and were not "simply autopilot." While acknowledging that it was "a close call," the district court nevertheless made distinct findings related to appellant's understanding that her actions were morally wrong and did not clearly err by relying in part on evidence that she knew that her actions were legally wrong.
A district court may reject a mental-illness defense based on evidence of a defendant's behavior before and after crimes, including evidence that the defendant was aware of the consequences of her actions. Roberts , 876 N.W.2d at 869. In Roberts , the same experts who testified in this case arrived at different conclusions as to whether the defendant understood the moral wrongness of his actions. Id. at 868-69. The supreme court found that the district court did not err in concluding that the defendant failed to establish the mental-illness defense by a preponderance of the evidence where the district court weighed the conflicting testimony of both experts and considered evidence of the *539 defendant's conduct before and after the crime as circumstantial evidence of his state of mind. Id. at 869-70. There, the defendant concealed his identity with dark clothing and a mask before the murder, disposed of evidence, fled after the offense, and showed awareness of the consequence of his actions after the fact. Id. at 869.
Here, appellant's driving conduct was captured on video, observed by eyewitnesses, and captured on her vehicle's systems, and her behavior in the store was captured on video as well. She also provided her own narrative of what she was thinking and feeling before, during, and after the crash. The district court properly considered this evidence as circumstantial evidence of her state of mind and determined that it showed she understood the moral wrongness of her actions. The district court acknowledged that this case is less clear than Roberts and other cases involving evidence of a defendant's behavior before and after the crime, and determined that appellant's long-term history of mental illness established "the existence of a serious, persistent, and delusional mental illness," but that her actions immediately before the crash "strongly suggest[ed] a surviving ability to understand right and wrong."
The district court also considered circumstantial evidence of appellant's mindset through expert testimony and her conduct before and after the crash. Dr. Panciera's testimony regarding appellant's lack of knowledge about the moral wrongfulness of her act was contradicted by the testimony of Dr. Wernsing and the district court's interpretation of appellant's actions prior to the crash. The district court was not bound to accept the testimony of either expert and made explicit findings contradicting aspects of Dr. Panciera's opinion.
While we agree with the district court that appellant suffered from "a serious, persistent, and delusional mental illness" and that this was a "close call," we conclude that there was no clear error on the part of the district court in finding that appellant had a "surviving ability to understand right and wrong." Appellant had the burden of establishing that she did not know her act was morally wrong at the time of the offense by a preponderance of the evidence. Evidence of her conduct before the crash was presented and two experts provided conflicting opinions about what that evidence showed. The district court credited the opinion of one expert over that of another and concluded that appellant failed to meet her burden. "We afford substantial deference to the district court's evaluation of the evidence of mental illness and the weight to assign to expert psychiatric testimony." Roberts , 876 N.W.2d at 871.
DECISION
This is a tragic case involving the actions of a person suffering from a severe mental illness whose attempt at suicide resulted in the death of one person and the serious injury of another. The district court did not err in determining that appellant failed to establish the mental-illness defense. We affirm appellant's convictions of criminal vehicular homicide and criminal vehicular operation but reverse appellant's conviction of third-degree murder. We remand for resentencing consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
Concurring in part, dissenting in part, Hooten, Judge
HOOTEN, Judge (concurring in part, dissenting in part)
I concur with the majority that the district court did not err in finding that appellant *540 failed to establish the mental-illness defense. But, because I disagree with the majority's holding that "without intent to effect the death of any person" is an element of third-degree murder that the state must prove, I respectfully dissent.
Our courts have consistently held that where an offense includes the absence of a mental state as part of the description of a crime, the prosecutor does not have to prove that mental state to obtain a conviction-it does not make the absence of that mental state an element of the crime that the state must prove. The second-degree felony murder statute contains the exact same language at issue here, "without intent to effect the death of any person." Minn. Stat. § 609.19, subd. 2(1) (2016). In State v. Cole , the supreme court held that lack of intent was not an element of second-degree felony murder. 542 N.W.2d 43, 51 (Minn. 1996). The majority dismisses Cole because it addressed whether guilty verdicts for first-degree and second-degree murder are legally inconsistent, but that is precisely why Cole is compelling. Verdicts are legally inconsistent when proof of the element of one crime negates an element of the other crime. Id. at 50. Cole necessarily considered whether lack of intent was an element of second-degree felony murder because intent to kill is an element of first-degree murder, Minn. Stat. § 609.185(a)(1) (2016), and the verdicts would be legally inconsistent if lack of intent was an element of second-degree felony murder the state was required to prove, see Cole , 542 N.W.2d at 50-51. But Cole held that lack of intent is not a necessary element of second-degree felony murder. Id. at 51. Because the third-degree murder statute contains the same "without intent to effect the death of any person" language as the second-degree felony murder statute, and both deal with the crime of murder, the third-degree murder statute also does not require the state to prove lack of intent to kill when prosecuting a third-degree murder charge. See Minn. Stat. § 609.195(a) (2016) ; see also State v. Netland , 535 N.W.2d 328, 332 (Minn. 1995) (Tomljanovich, J., concurring specially) (stating lack of intent is not essential element of third-degree murder that must be proven at trial); State v. Mytych , 292 Minn. 248, 257-59, 194 N.W.2d 276, 282-83 (1972) (affirming district court's determination that affirmative proof of the lack of intent to effect the death of any person was not necessary to find appellant guilty of murder in the third degree).
Nor is Cole an anomaly in our caselaw. In State v. Moore , the court held that verdicts for first-degree and second-degree murder were not legally inconsistent because the state is not required to prove that the killing was "without premeditation" in a second-degree murder prosecution. 438 N.W.2d 101, 108 (Minn. 1989). In State v. Walker , the court held that "without intent to inflict great bodily harm" in the aggravated assault statute does not require "affirmative evidence that there was no intent to inflict a serious injury." 279 Minn. 441, 441-43, 157 N.W.2d 508, 508-10 (1968). Rather, the language relieved the prosecution of the burden of proving an intent to inflict great bodily harm. Id. And in State v. Staples , the court held that the language in the second-degree manslaughter statute that the killing was " 'without a design to effect death' ... was to dispense with allegation and proof of any such design. It cannot be supposed that the Legislature meant thereby to require affirmative allegation or proof by the state that the killing was absolutely without any design to effect death." 126 Minn. 396, 400, 148 N.W. 283, 284 (1914).
The majority's decision to disregard these precedents and instead rely on State v. Burg , 648 N.W.2d 673 (Minn. 2002), is misguided. Burg dealt with the language of *541 "without lawful excuse" in the offense of nonsupport of a child, not language of lack of intent. Id. at 678-80. And neither of the cases Burg relied on dealt with language of lack of intent. See id. ; In re Welfare of L.Z. , 396 N.W.2d 214, 218 (Minn. 1986) ("without lawful excuse" in definition of habitual truant); State v. Brechon , 352 N.W.2d 745, 748-50 (Minn. 1984) ("without claim of right" in criminal trespass statute). Nor is there any indication in Burg that it intended to overrule the holdings of Cole , Moore , Walker , or Staples .
Based upon this record and the legal precedent that lack of intent is not an element of second-degree murder or, by analogy, an element of third-degree murder, I conclude that there is sufficient evidence supporting the district court's determination that appellant's conduct met the statutory definition of third-degree murder. Appellant's conviction for third-degree murder should be affirmed.

The state argues that even if the statute is not ambiguous, this is one of those rare cases where the plain meaning of the statute confounds the legislative purpose of the statute as in Wegener v. Comm'r of Revenue , 505 N.W.2d 612, 617 (Minn. 1993). The supreme court has not decided whether the absurdity canon applies to unambiguous criminal statutes. See State v. Smith , 899 N.W.2d 120, 125 (Minn. 2017). Even if the absurdity canon is available in criminal cases, this is not the "exceedingly rare case" in which to apply it. Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 651 (Minn. 2012). Giving "any person" its plain meaning does not confound the legislative purpose of the statute.